**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANINE GORDON, | Index No. 11 CIV 1001 |
| **Plaintiff,** | Justice: Richard J. Sullivan |
| vs. | **AMENDED COMPLAINT FOR:** |
| | **[1] COPYRIGHT INFRINGEMENT** |
| RYAN MCGINLEY | (17 U.S.C. §§ 101 ET SEQ.) |
| LEVIS STRAUSS & COMPANY | **[2] CONTRIBUTORY COPYRIGHT** |
| CHRISTOPHER PEREZ | **INFRINGEMENT** |
| RATIO 3 GALLERY | **[3] VICARIOUS COPYRIGHT** |
| JOSE FREIRE | **INFRINGEMENT** |
| TEAM GALLERY | **[4] BREACH OF CONTRACT** |
| AGNÉS ANDRÉE MARGUERITE TROUBLÉ | **[5] VIOLATION OF NEW YORK** |
| a.k.a "AGNES B." | **BUSINESS LAW** |
| AGNES B. WORLDWIDE | ARTICLE 22A §§349, 350(A); |
| PETER HALPERT | ARTICLE 24 §360(L) |
| PETER HAY HALPERT FINE ART | **[6] BREACH OF IMPLIED DUTY OF** |
| | **CONFIDENTIALITY/** |
| **Defendants.** | **CONSTRUCTIVE TRUST** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff, Janine Gordon (hereinafter "Plaintiff"), by and through her attorney of record,

hereby alleges as follows:

### NATURE OF THIS ACTION

1.      Plaintiff brings this action to enforce Plaintiff's exclusive copyright and contract

rights.  This case arises out of Defendants' exploitation of a series of photographic images, each

and every one of them produced by McGinley and distributed under various titles and names

(including the Levi Strauss and Co. advertising campaigns, "Go Forth" and "Opening

Ceremony", annexed hereto as Exhibit "C", produced as both a video/film representation and

photographic print), and exhibited and annexed hereto (hereinafter "McGinley Images" and/or

infringing work, annexed hereto as Exhibit "B"), which were derived from Plaintiff's original

photographic images each individually produced by Plaintiff under various titles and names

(each hereinafter referred to as a "Gordon Image" or "Plaintiff's Image" and collectively referred to as the "Gordon Images", all of which are annexed hereto as Exhibit "A") and pending registration under U.S.C. Title 17, the Copyright Act.  Plaintiff is the owner of the copyrights to the Gordon Images.  Defendants do not possess any derivative rights of any type or kind in the Gordon Images.

2.     Defendants have surreptitiously infringed upon Plaintiff's copyright in the Gordon Images through the creation, sale, distribution, and production for purposes of marketing and publicity, works substantially based upon the Gordon Images originally produced by Plaintiff without securing rights and paying compensation.

3.     Plaintiff is a widely known and lauded photographic artist, who has been praised for her works by critics:

| | |
|---|---|
| "As a photographer, New Yorker Janine Gordon could pass for the artistic offspring of Diane Arbus…" | Kenneth Baker<br>**San Francisco Chronicle**<br>*August 18, 2001* |
| "To anyone who has seen her striking photography in the Whitney Museum's permanent collection, however…" | Arena Hommes<br>**Plus**<br>*Fall 2002* |
| "Gordon gets tenderness and that alone makes these images extraordinary" | Bill Arning<br>**Village Voice**<br>*March 5, 1996* |
| "…Gordon, [is] like a modern day Caravaggio, searching through the streets of a bustling metropolis to capture male beauty. | Wayne Northcross<br>**LGNY**<br>*June 29, 2000* |
| "As an artist, Gordon possesses a degree of passion, empathy, verve and reach.  She is sensitive to planes, line, pose, glance, mood and sculptural qualities of drapery, some compositions are distinguished by complexity and repose." | Ben Lifson<br>**Art Forum**<br>*Summer 1996* |

| | |
|---|---|
| "Gordon's pictures are participatory, not neutral.  The transform what is essentially violent chaos into something resembling a religious ritual.  Ironically, Gordon's photos… help to generate an overall mood of sobriety in this Biennial." | Edward Sozanski<br>**Philadelphia Inquirer**<br>*March 17, 2002* |
| "Once again Janine Gordon went to the very center of an aggressive system, putting herself in danger to get to the heart of the action." | Daria Joubert<br>**Palais de Tokyo**<br>*December 2004* |

See also Exhibit "D" – Composite of Media Quotes regarding Plaintiff and her works.

## JURISDICTION AND VENUE

4.      This is an action for copyright infringement and permanent injunctive relief under the United States Copyright Act, 17 U.S.C. §§ 101 et seq. (hereinafter, "the Copyright Act"), and for related state law claims of breach of contract and violation of New York General Business Laws Article 22A §§ 349, 350(A) and Article 24 § 360(L).

5.      This Court has original subject matter jurisdiction pursuant to the Copyright Act, 17 U.S.C. §101 et seq., 28 U.S.C. §1331 (federal question jurisdiction), and § 1338(a) and (b) (jurisdiction over copyright actions), and § 1332 as an action between citizens of different states with an amount in dispute exceeding $75,000.00, and the Declaratory Judgment Act, 28 U.S.C.

6.      Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over the state claims herein in that these claims are related to, and form part of, the same case and controversy as the federal claims herein.

7.      This Court has personal jurisdiction over the Defendants in that Defendants are conducting business in the State of New York and in this District.  (See N.Y. C.P.L.R. § 301). All Defendants have transacted business within New York and contracted to supply goods or services in New York in connection with the matters giving rise to this suit. (Id. § 302[a][1]). Defendants have also committed infringing acts outside of New York causing injury to the

Plaintiff in New York, and Defendants regularly do or solicit business in New York, and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce. (Id. § 302(a)(3); N.Y.U.D.C. § 404).

8.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(a).  Upon information and belief, each Defendant may be found in this District and/or has principal places of business in this District and/or a substantial part of the acts of infringement complained of herein occurs or has occurred in this District.

## THE PARTIES

9.     Plaintiff owns property in the State of New York, conducts her primary business within this District in the State of New York, and has her principal places of residence and business in the State of New York.  Plaintiff is the owner of the copyright of the Gordon Images pursuant to Title 17 of the United States Code, which are pending registration thereunder.

10.     Upon information and belief, each and all of the following Defendants jointly and severally participated in the infringing activity as set forth herein, and each Defendant was acting within the course and scope of employment, partnership and/or agency with the other, and each of the following Defendants is jointly and severally liable for the injuries to Plaintiff.

### I.   Defendant Ryan McGinley

11.     Upon information and belief, Defendant Ryan McGinley (hereinafter "McGinley" or with others collectively "Defendants") is a resident of and/or owns real property in this District in the State of New York.  Upon information and belief, McGinley controlled, directed

4

and benefited from the infringing behavior of the other Defendants, and is an agent and/or employee of Levi Strauss and Co.  This Defendant has also committed infringing acts outside of the State of New York, causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect his infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce.  (*Id.* at §302(a)(2) and N.Y.U.D.C. §404).

## II.  The Levi Strauss and Co. Defendants

12.     Upon information and belief, Defendant Levi Strauss and Co. (hereinafter "Levi" or with others collectively "Defendants" and/or "Levi Defendants") is a publicly traded corporation organized and existing under the laws of the State of California, and is registered to do business in the State of New York as a foreign corporation.

13.     Upon information and belief, Defendant Levi is, and at all times material hereto was, conducting business and/or maintains a business office, in the State of New York and this District for the purposes of N.Y. C.P.L.R. §301, and/or has transacted business within the State of New York and/or contracted to supply goods or services in the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a][1]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York, and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in

the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

### III. Defendant Christopher Perez

14.      Upon information and belief, Defendant Christopher Perez (hereinafter "Perez" or with others collectively "Defendants" and/or "Ratio 3 Defendants") is a resident of the State of California, and is upon information and belief an owner of Ratio 3 Gallery, which conducts business in the State of New York and this District in the State of New York.  Further, upon information and belief, Perez, by himself and or through Ratio 3 Gallery, conducts business and has transacted business within the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

15.      Upon information and belief, Perez controlled, directed and benefited from the infringing behavior of the other Defendants, and is an agent, employee, and/or alter ego of Ratio 3 Gallery and is an agent and/or employee of McGinley.

### IV. The Ratio 3 Gallery Defendant

16.      Upon information and belief, Defendant Ratio 3 Gallery (hereinafter "Ratio 3 Gallery" or with others collectively "Defendants" and/or "Ratio 3 Defendants"), a company

incorporated in California with its corporate headquarters in San Francisco, California, is owned and controlled by Defendant Perez, who, upon information and belief, acts as its alter ego of Ratio 3 Gallery, and is located at 1447 Stevenson Street, San Francisco, CA 94103.  This Defendant was formed for the purpose of discovering, producing financing and selling artistic pieces and content, including, but not limited to, forms and formats such as those used by the Plaintiff and in which the infringed upon work has be created. Further, upon information and belief, this Defendant has transacted business within the State of New York and/or contracted to supply goods or services in the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a][1]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York, and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

### V.  Defendant José Freire

17.     Upon information and belief, Defendant José Freire (hereinafter "Freire" or with others collectively "Defendants" and/or "Team Gallery Defendants") is a resident of the State of New York, and is, upon information and belief, the owner and alter ego of The Team Gallery, Inc., which is registered as a domestic corporation for the purpose of doing business, and conducts business in the State of New York and this District in the State of New York.  Further, upon information and belief, Freire, by himself and or through The Team Gallery, conducts business and has transacted business within the State of New York in connection with the

matters giving rise to this suit.  (*Id at* §302[a]).  This Defendant has also committed infringing

acts outside of the State of New York causing injury to Plaintiff in the State of New York, and

Defendant regularly does or solicits business in the State of New York and/or derives substantial

revenue from goods used or services rendered in the State of New York, and/or expects or

reasonably should expect its infringing conduct to have consequences in the State of New York

and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C.

§404).

18.     Upon information and belief, Freire benefited from the infringing behavior of the

other Defendants, and is an agent, employee, and/or alter ego of Team Gallery and is an agent

and/or employee of McGinley.


## VI. The Team Gallery Inc. Defendant

19.     Upon information and belief, Defendant Team Gallery Inc. (hereinafter "Team

Gallery" or with others collectively "Defendants" and/or "Team Gallery Defendants") is a

corporation organized and existing under the laws of the State of New York, is owned and

controlled by Defendant Freire, who, upon information and belief, acts as its alter ego, and is

registered to do business in the State of New York as a domestic corporation.

20.     Upon information and belief, Team Gallery is, and at all times material hereto

was, conducting business and/or maintains a business office located at 83 Grand St., New York,

NY 10013-5323, in the State of New York and this District for the purposes of N.Y. C.P.L.R.

§301, and/or has transacted business within the State of New York and/or contracted to supply

goods or services in the State of New York in connection with the matters giving rise to this suit.

(*Id at* §302[a][1]).  This Defendant has also committed infringing acts outside of the State of

New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York, and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

## VII. Defendant Agnés Andrée Marguerite Troublé a.k.a. "Agnes B."

21.      Upon information and belief, Defendant Agnés Andrée Marguerite Troublé (hereinafter "Troublé" or with others collectively "Defendants" and/or "ABW Defendants") is a resident of Paris, France, and is upon information and belief an owner of property in the State of New York.  Further, upon information and belief, Troublé is the owner of Agnes B. Worldwide, Inc., aka "CMC Agnes B." (hereinafter referred to as "ABW"), a French stock company registered, upon information and belief, as a foreign corporation in New York State for the purpose of doing business under the name "Agnes B. Worldwide, Inc.", and conducts business in the State of New York and this District in the State of New York at 401 Broadway, Ste. 1606, New York, NY 10013.  Further, upon information and belief, Troublé, by herself and or through ABW, as its alter ego, conducts business and has transacted business within the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in

the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

22.     Upon information and belief, Agnes B. benefited from the infringing behavior of the other Defendants, and is an agent, employee and/or alter ego of ABW, and is an agent and/or employee of McGinley.


### VIII. The Agnes B. Worldwide, Inc. Defendant

23.     Upon information and belief, Defendant Agnes B. Worldwide, Inc. (hereinafter "ABW" or with others collectively "Defendants" and/or "ABW Defendants") is a subsidiary corporation CMC Agnes B., a foreign corporation organized and existing under the laws of France, and, upon information and belief, is registered to do business in the State of New York, as a foreign corporation.

24.     Upon information and belief, Defendant ABW is, and at all times material hereto was, conducting business and/or maintains a business office located at 401 Broadway, Ste. 1606, New York, NY 10013, in the State of New York and this District for the purposes of N.Y. C.P.L.R. §301, and/or has transacted business within the State of New York and/or contracted to supply goods or services in the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a][1]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York, and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

## IX. Defendant Peter Halpert

25.      Upon information and belief, Defendant Peter Halpert (hereinafter "Halpert" or with others collectively "Defendants" and/or "Halpert Gallery Defendants") is a resident of the State of New York, and is, upon information and belief, an owner of Peter Hay Halpert Fine Art, an art gallery business which is registered as a domestic corporation for the purpose of doing business, and conducts business in the State of New York and this District in the State of New York.  Further, upon information and belief, Halpert, by himself and or through the Halpert Gallery as its alter ego, conducts business and has transacted business within the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

26.      Upon information and belief, Halpert benefited from the infringing behavior of the other Defendants, and is an agent, employee and/or alter ego of the Halpert Gallery, and is an agent and/or employee of McGinley.

## X.  The Peter Hay Halpert Fine Art Defendant

27.      Upon information and belief, Defendant Peter Hay Halpert Fine Art (hereinafter "Halpert Gallery" or with others collectively "Defendants" and/or "Halpert Gallery Defendants") is a corporation organized and existing under the laws of the State of New York, is owned and

11

controlled by Defendant Halpert, who, upon information and belief, acts as its alter ego, and is registered to do business in the State of New York as a domestic corporation.

28.     Upon information and belief, Halpert Gallery is, and at all times material hereto was, conducting business and/or maintains a business office located at 223 W 21st Street, New York, NY 10011, in the State of New York and this District for the purposes of N.Y. C.P.L.R. §301, and/or has transacted business within the State of New York and/or contracted to supply goods or services in the State of New York in connection with the matters giving rise to this suit. (*Id at* §302[a][1]).  This Defendant has also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendant regularly does or solicits business in the State of New York, and/or derives substantial revenue from goods used or services rendered in the State of New York, and/or expects or reasonably should expect its infringing conduct to have consequences in the State of New York and derives substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. §404).

## XI. The Collective Defendants

29.     Upon information and belief, Defendants McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery Inc., ABW, Halpert Gallery and Levi Strauss and Co. are, and at all times material hereto were, residents of the State of New York and/or conducting business in the State of New York and this District for the purposes of N.Y. C.P.L.R. §301, and/or have transacted business within the State of New York and/or contracted to supply goods or services in the State of New York in connection with the matters giving rise to this suit.  (*Id at* §302[a][1]).  These Defendants have also committed infringing acts outside of the State of New York causing injury to Plaintiff in the State of New York, and Defendants regularly do or solicit

business in the State of New York, and/or derive substantial revenue from goods used or services rendered in the State of New York, and/or expect or reasonably should expect their infringing conduct to have consequences in the State of New York and derive substantial revenue from interstate commerce. (*Id at* §302(a)(2) and N.Y. U.D.C. § 404).

30.     Upon information and belief, Defendants McGinley and Levi are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

31.     Upon information and belief, Defendants McGinley, Perez, and Ratio 3 Gallery are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

32.     Upon information and belief, Defendants McGinley, Freire and Team Gallery Inc. are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

33.     Upon information and belief, Defendants McGinley, Troublé and ABW are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

34.     Upon information and belief, Defendants McGinley, Halpert and Halpert Gallery are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

35.     Upon information and belief, Defendants Perez and Ratio 3 Gallery are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

36.     Upon information and belief, Defendants Freire and Team Gallery are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its

and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

37.     Upon information and belief, Defendants Troublé and ABW are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

38.     Upon information and belief, Defendants Halpert and Halpert Gallery are, and at all times material hereto were, the alter-egos of each other and a unity of interest and/or ownership among these Defendants exists such that any separateness has ceased to exist; and these Defendants, and/or each of them, used assets of the other Defendants, and/or each of them, for its and/or their separate, individual purposes, and they transferred valuable assets, property rights and/or interests to each other without adequate consideration to Plaintiff.

39.     Upon information and belief, each and all of the Defendants jointly and severally participated in the infringing activity as set forth below and each Defendant was acting within the course and scope of employment, partnership and/or agency with the other, and each of the Defendants is jointly and severally liable for the injuries to Plaintiff.

## PROPER VENUE

40.     Venue is proper in the Southern District of New York and this Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C.A. §1391(a) and 28 U.S.C.A. §1391(b) because the acts, practices and transactions pleaded herein occurred and/or were effected within

the Southern District of New York; and pursuant to N.Y. C.P.L.R. §302(a) because Defendants committed tortious acts without the state causing injury to Plaintiff within the state they expected or should have reasonably have expected to have consequences in  the state, they regularly do  or solicit  business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed and/or services rendered in the state and/or derive substantial  revenue  from  interstate or international commerce; and Plaintiff is a resident of the Southern District of New York as is, upon information and belief, Defendants McGinley, Freire, Halpert, and Troublé.


## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.  Plaintiff's Career and Work

41.      Plaintiff is a professional artist working in the field of photographic art.  She has created work in this area of art for more than 15 years.  Her photographic works, in particular the Gordon Images, are well known around the world and lauded by critics (Exhibit "D"), and have been exhibited in such well known venues as the Whitney Museum (including as part of the museum's permanent collection), the San Francisco Museum of Modern Art, Dartmouth College, and the Hammer Museum in Los Angeles.  Additionally, Plaintiff has been and continues to be exhibited in many other museums, shows and galleries nationally and internationally.

42.      In mid-year 2001, Plaintiff's work came to the attention of the Whitney Museum and its main curator, Larry Rinder.[1]  Rinder presented Plaintiff's work to the Whitney Museum board committee[2] as a candidate for purchase (of selected pieces of her work) and inclusion with

---

[1] As will be discussed with more detail herein, Defendant Perez discovered Plaintiff and her work and presented them to Rinder and the Whitney Museum as an artist worthy of consideration for inclusion in the Whitney's permanent collection.

[2] This board is responsible for selecting works to part of the Biennial Exhibition, as well as works to be featured in

the Museum's permanent collection.  Four of her pieces were chosen, and are still displayed in the Whitney's permanent collection to this day.

43.     Thereafter, Plaintiff was selected by the Whitney Museum (by the board) to be included in its 2002 Whitney Biennial[3] exhibition.  Plaintiff's work was considered one of the most noteworthy among the artists.[4]

44.     Subsequent to the 2002 Whitney Biennial exhibition, the Whitney Museum bought an additional photo from Plaintiff's work (one of those exhibited in the Biennial) to include in its permanent collection where is continues to be displayed.

45.     In preparing to present her work to the Whitney Museum, Perez worked closely with Gordon – the pair would often travel between Gordon's studio and the Whitney office to review her work.[5]  They also communicated often via phone and frequent emails – Gordon would email and personally deliver to Perez frequent updates of her work as it was created (electronic images, CDs, videos, etc.).  Gordon had also personally given Perez many photographic works of art, including a few examples from the Gordon Images (which were the subject of some of the derivative McGinley Images).

46.     Since the Biennial, Plaintiff has been featured in many exhibitions in dozens of museums and galleries around the world, and is well known in her field of art.

---

other exhibitions and part of the museum's permanent collection.

[3] "The Whitney Biennial is the most venerable, the most watched show of its kind in the United States - a major, temperature-taking survey of what's going on in contemporary art."  (The Boston Globe, Whitney show is an anthem to the awful, by Sebastian Smee, *http://www.boston.com/ae/theater_arts/articles/2010/02/25/ whitney_show_sings_an_anthem_to_the_awful/* ); "The Biennial attempts (impossibly) to provide a "snapshot" of the past two years in contemporary art."  (The Wall Street Journal, Defining the Whitney Biennial, by Amy Finnerty, *http://online.wsj.com/article/SB120700937800178739.html*);

[4] Reviews of Plaintiff's work,, annexed hereto as Exhibit "D").

[5] The relationship between Gordon and Perez blossomed into a more personal one to the point where they would attend movies and gallery openings/exhibits together.  Gordon had even invited Perez to an overnight at her family summer home in Montauk, Long Island, New York.

## II. Defendant McGinley's Access to the Gordon Images

47.     During or about the 2002 Whitney Biennial, Plaintiff and Defendant McGinley met each other for the first time at an art industry dinner at the Pongsri Thai restaurant, located at 106 Bayard Street, New York, NY 10013.  Plaintiff was introduced to McGinley by Perez (who was her "escort" to the dinner).  Upon meeting, McGinley acknowledged that he was very familiar with Plaintiff's works.

48.     Subsequent to the 2002 Whitney Biennial, the Whitney Museum held a normally scheduled exhibition which included pieces of McGinley's work at that time.  Upon information and belief, the exhibition had been planned during the 2002 Whitney Biennial by Perez and Larry Rinder, and, during the preparation and display of the Whitney exhibition in which he participated, McGinley had total and complete access to view and examine the Gordon Images featured in the 2002 Whitney Biennial and the Gordon Images part of the Whitney Museum's permanent collection.

49.     Perez left the Whitney Museum some time after the Biennial in 2002 and founded his own art gallery in San Francisco, Defendant Ratio 3 Gallery.  Plaintiff was one of Perez's first artists, and exhibited her work in Ratio 3 in its very first show.  A short time later, Perez selected McGinley to also exhibit in Ratio 3.  Soon after McGinley began exhibiting at Ratio 3, upon information and belief, Perez began representing McGinley as a representative and agent for commercial sale and distribution of McGinley's works – McGinley was, upon information and belief, also adopted by Perez and Ratio 3 as a featured (and stable) Ratio 3 Gallery artist. Contemporaneous with his representation of McGinley, Perez also ceased representing Plaintiff as one of his gallery's artists.

50.     Plaintiff and Defendant McGinley met once again in 2003, at a Museum of

Modern Art PS1[6] opening.  McGinley's reaction to the sight of Plaintiff, according to Plaintiff,

was a fearful gasp and speedy retreat into the crowd.  Plaintiff did nothing to warrant this

reaction.

51.     Plaintiff and McGinley crossed paths indirectly once again in 2005, when Plaintiff

began using a professional printer, Don Felix Cervantes, for the printing of her color

photographs.  Plaintiff had been previously introduced to Cervantes and his work by Perez.

Cervantes also provided his photograph printing services to McGinley, who had been using this

printer for a few years before Plaintiff's introduction to him (upon information and belief, the

printer was introduced to McGinley by Perez as well).  Though the parties were using the same

professional printer for development of their photographs, they never met each other with or

through Cervantes, however, Plaintiff knew that McGinley was working with Cervantes because

she was so informed by Cervantes; additionally, as will be demonstrated further herein, upon

information and belief, McGinley was also aware that Plaintiff worked with Cervantes as well.

52.     At the start of their relationship, Plaintiff's work with Cervantes was without

issue or incident – the work produced by him was speedy and satisfactory.  However, things soon

degraded.  There were two incidents when Plaintiff had problems retrieving her negatives from

Cervantes when demand – said negatives were not released by Cervantes until weeks after the

demand.  Cervantes also became unwilling on many occasions to provide prints of Plaintiff's

---

[6] "MoMA PS1 is one of the oldest and largest nonprofit contemporary art institutions in the United States.  An exhibition space rather than a collecting institution, MoMA PS1 devotes its energy and resources to displaying the most experimental art in the world.  A catalyst and an advocate for new ideas, discourses, and trends in contemporary art, MoMA PS1 actively pursues emerging artists, new genres, and adventurous new work by recognized artists in an effort to support innovation in contemporary art. MoMA PS1 achieves this mission by presenting its diverse program to a broad audience in a unique and welcoming environment in which visitors can discover and explore the work of contemporary artists. MoMA PS1 presents over 50 exhibitions each year, including artists' retrospectives, site-specific installations, historical surveys, arts from across the United States and the world, and a full schedule of music and performance programming."  (http://ps1.org/about/).

works, citing his dedication to McGinley's works as a priority. After a year, Cervantes informed Plaintiff that he would no longer work with Plaintiff because he was instructed by McGinley to cease doing so. Upon information and belief, McGinley, through his relationship with Cervantes, had access to Plaintiff's Gordon Images and the negatives from which they were developed.

53.     In 2006, both Plaintiff and McGinley were exhibited together in an exhibition held at the Shirin Kunstalle and Frankfurt Museum. The exhibition was entitled "Youth of Today". Again, Plaintiff's works, some of them included in the Gordon Images, were available for McGinley to examine.

### III. The First McGinley Infringement Discovery

54.     In or about mid 2007, Plaintiff met with Robert Grossman of the Mitchell Innes and Nash Gallery, who has worked and continues to work with Plaintiff to exhibit and sell her work. Grossman informed Plaintiff that he had discovered that McGinley had produced recent (at that time) photographic works, one of the works comprising the McGinley Images, which was strikingly similar to a photographic work contained in the Gordon Images. The series of photographic McGinley works, which are included among the McGinley Images and is entitled "Irregular Regulars", were exhibited on in 2007 by Defendant, The Team Gallery, and the subject matter of this exhibit was "Morrissey" and his concerts. The McGinley Image in question could be found, and were featured, on Defendant Team's website, which is what Grossman presented to the Plaintiff when he informed her of the potential infringement.[7]

---

[7] At this time, the "Irregular Regulars" exhibit had already ended, and Plaintiff was only capable of reviewing the few selected images from the exhibit made available for viewing on the Team Gallery website.

Plaintiff was, to say the least, surprised to see the similarities of the piece (comprising some of the McGinley Images) with one of her works contained in her Gordon Images.

55.     On or about the same time as when Grossman informed her of the infringing work, Plaintiff began to hear from other sources – friends and acquaintances in the art world – that the same McGinley Image seemed derivative of her work.

56.     After discovering the McGinley photo which was "strikingly similar" to her own work, Plaintiff approached Perez believing that he would be familiar with the work since she knew him to work so closely with McGinley, and since he was so intimately familiar with her works.[8]  When confronted, Perez was told that the McGinley Image referred to above were very similar to some of her Gordon Images, and that she believed that McGinley had reproduced her work without her permission, infringing upon her copyright.  Further, she informed Perez that the infringing McGinley picture was related to one of the Gordon Images previously handled by him.  Perez was not surprised by the accusation, nor did he deny it.  Nothing was done thereafter by Perez.

### IV. McGinley's Serial Infringement Revealed

57.     After confronting Perez about the first image or two she discovered to be derivative of her work, Plaintiff had no knowledge of any other infringing activity.  However, in 2010, Plaintiff had occasion to see a campaign being distributed on television and print advertising by Defendant Levi (Exhibit "C") entitle "Go Forth".  Plaintiff recognized in this campaign various images which were strikingly similar to several of her works, some of those contained in the Gordon Images.  Upon investigation into these images, she discovered many

---

[8] This belief regarding Perez's relationship with McGinley is not unfounded as Perez, himself, has represented in interviews that he works very closely with McGinley in the editing and selection of his photos (see audio CD, Exhibit "H").

other images in the "Go Forth" campaign as well as the "Opening Ceremony campaign which were also seemed derivative of her works, all of which, according to blog articles regarding the campaign, were attributed to and created by Defendant McGinley.

58.    At this point, Plaintiff started doing research into McGinley's entire body of work and quickly discovered that McGinley had produced many other pieces and series, even before the above discussed "Irregular Regulars" series release[9], which had a striking similarity to many of the pieces she had created.  It was clear to Plaintiff that McGinley was serially infringing upon her copyrights, and had been doing so for years.

59.    The infringing McGinley Images are derivative of works created and produced by Plaintiff (the Gordon Images).  A close analysis (as provided in Exhibit "E"[10]) reveals that the McGinley Images are blatantly and subtly derivative of independent or combined Gordon Images created by Plaintiff over the full span of her career (all of which were created by Plaintiff long before the McGinley Images).  Such infringing activities continue even to this day as he produces new works based upon that created by Plaintiff.

60.    The boldness of McGinley's infringement does not stop with just the content of the derivative works.  He has even derived the same or similar title for his infringing works from those titles of Plaintiff's original work – for instance, McGinley's photograph "Jess" (Exhibit "B" and Exhibit "E[64]") bares an infringing resemblance in look and title to Plaintiff's work entitled "Jessica" (*Id*).  This is seen again between McGinley's "Dream Girl" as compared to Plaintiff's "Dream Bike" (*Id* and Exhibit E[143]).

61.    Plaintiff was interested in the opinion of her peers regarding the comparison of her works with McGinley's.  So she placed a few pieces onto a FaceBook group she created

---

[9] More recently, Plaintiff received an email communication from Defendant Halpert (Exhibit "G") wherein he states therein that he was once the exclusive representative of McGinley and his work for five years, from 2000 to 2005.

[10] Plaintiff includes an affidavit which discusses the analysis process included in Exhibit "E".

(entitled "The Con Artist").  Among the many responses from art professionals, two noteworthy art critics who are extremely famous and well respected in the art world posted comments stating that "it's pretty clear to anybody who cares about this kind of thing that [Plaintiff was] there first" and that McGinley "has been 'tailgating' [Plaintiff's] ideas" (Exhibit "F"); i.e. the McGinley Images are derivative of Plaintiff's Gordon Images.  This "tailgating" is even indirectly admitted by McGinley, himself, who has admitted in two separate interviews that he derives "inspiration" from the works of others he sees online, in magazines and from films (see Exhibit "H", pg. 4).[11]

62.    Most recently, Plaintiff discovered that additional infringing works had been sold by the Peter Hay Halpert Fine Art gallery when she received an email from Peter Halpert and the Halpert Gallery (Exhibit "G").  In this email, it describes that the Halpert Gallery "represented Ryan McGinley exclusively, worldwide, for 5 years, from 2000 – 20005" (*Id.*), and said email displayed a McGinley Image (*Id*) which is a derivative work of the Gordon Image analyzed under Exhibit "E[34]".

63.    McGinley has profited a great deal off of the work created by Plaintiff, including those derivative works produced by McGinley for Defendant Levi under contract, which are being used by Levi to advertise their products.  He has further released and is exhibiting more works which continue his infringing activities.

## V.  McGinley's Infringing Activities

64.    McGinley has produced a large body of work, most of which originates from the Plaintiff.  There cannot be any doubt that McGinley has incorporated into his process an approach which derives elements and whole brushstrokes, compositions and development from other works, especially those of Plaintiff.  McGinley has publicly stated himself that this is his

---

[11] Plaintiff has, since 1995, placed her work on her internet website.

common practice, wherein he reaps inspiration from "lots of things – amateur photographs off the internet, nudist publications, stills from movies that [he] liked, [and] photography annuals." (Seesaw Magazine article interviewing McGinley, Exhibit "H").  His habit of deriving his works from that created by others has been confirmed by Halpert to Plaintiff directly when he stated to her that McGinley often reviews photography art books and magazines for "inspiration", especially when he is suffering a block, and that (in his opinion) McGinley would derive his work from other well known photography artists such as Nan Goldin, Larry Clarke, and Wolfgang Tillmans.

65.     Plaintiff has had a website featuring her art up on the internet and available since approximately 1995.  This has provided McGinley the ultimate "access" to Plaintiff's works.  Moreover, McGinley and Perez have confirmed that they work very closely with one another (see audio CD containing an interview with McGinley and Perez, Exhibit "H").  As such, Perez, who upon information and belief has retained many of Plaintiff's works since her days at the Whitney, provided McGinley additional access to exploit Plaintiff's works.  Therefore, given McGinley's habit of seeking "inspiration" from the internet as well as magazines, his access to Perez's alleged database of Plaintiff's works, and given the remarkable similarity between the McGinley Images and the Gordon Images, McGinley has clearly derived the McGinley Images, and has derived profit, from Plaintiff's works.

### VI. Levi's Infringing "Go Forth" and "Opening Ceremony" Campaigns

66.     On or about mid-year, 2009, Levi released its "Go Forth" campaign, followed by Levi's "Opening Ceremony" campaign (see Exhibit "J"), and distributed them as video commercial spots for airing on television, and as still photos with copy for print advertising.

This campaign was intended to reinvigorate the brand name and products to increase sales.[12]

67.    When the campaign came to Plaintiff's attention, she noticed imagery strikingly similar to her own works (the Gordon Images).  Plaintiff investigated the origins of the campaign and discovered that McGinley was responsible for its creation and imagery.  Upon information and belief, McGinley was either responsible for developing all of the imagery used in the campaign, or McGinley created imagery upon which various portion of, or the entirety of, the campaign was derived.

68.    An analysis of the campaign imagery (Exhibit "C") reveals, again, that the imagery created by McGinley or influenced from McGinley imagery was both blatantly and subtly derivative of the Gordon Images created by Plaintiff prior to the campaign.

69.    Since the campaign's release, Levi has earned millions of dollars in sales (which shall be determined at trial) as a result of this campaign to reinvigorate its brand and products as a direct result of the infringing works.

## VII.    Perez and Ratio 3 Gallery

70.    While still working as the assistant curator for the Whitney Museum, Perez first came across Plaintiff and her work in or about September of 1999 at Xavier LaBoulbene Gallery, where Plaintiff was exhibiting in a solo show.  Perez expressed to Plaintiff a great attraction and admiration for her work and offered to present it to the Whitney board as a potential purchase for the Whitney Museum's permanent collection.  Agreeable to this, Plaintiff consented.

---

[12] "The Levi's brand has been incoherent in the last few years, having lost the strong position it struck in the 80s and 90s. Much of its recent advertising – particularly BBH's Dangerous Liason ad directed by Ringan Ledwidge – has tried to inject some of the sexiness previously associated with the brand by referencing its history, and Go Forth, the first campaign from W+K Portland for Levi's, is ploughing a similar furrow."  Eliza Williams, "Levi's Go Forth", The Creative Review (http://www.creativereview.co.uk/cr-blog/2009/june/levis-go-forth), 6/30/2009. (Exhibit "J").

71.     Subsequent to Perez providing a sample of Plaintiff's work to the Whitney, in the year 2000, Perez requested (on behalf of the Whitney board) of Plaintiff additional pieces and bodies of her work (comprising the Gordon Images) for review by the Whitney board.  In mid year 2000, the Whitney Museum purchased four pieces of Plaintiff's photographic work (one of the Gordon Images) to become part of its permanent collection (where they are still displayed).

72.     On or about late in the year of 2000, Perez was hired to curate a show at the Refusalon art gallery.  As curator, he was permitted to choose an artist for the exhibition, and his choice was Plaintiff.  Upon information and belief, commensurate with his duties as the curator of the exhibition, Perez was to receive a commission share in the sale of Plaintiff's art (if not a fixed fee for services).  At that time, Plaintiff submitted to Perez for review every piece and body of work she had created throughout her career (video art, photographs, etc.).  From her entire body, he selected pieces for exhibition in the Refusalon show (some of which were sold at the exhibition).

73.     On or about the end of 2000/early 2001, Perez escorted Plaintiff to an art world dinner at the Pongsri Thai restaurant.  At this dinner, Perez introduced Plaintiff to McGinley as a new "up and coming artist" on which he had his eye.

74.     In or about March of 2002, Plaintiff had been chosen by the Whitney Museum to be part of its 2002 Whitney Biennial exhibition.  Perez was the assistant curator.  Perez would consult with Plaintiff (by email, telephone or during visits at Plaintiff's studio) regarding all of her previous work already in his possession, and regarding Plaintiff's newest work (created by Plaintiff since the Refusalon exhibition) to determine the pieces which would appear in the 2002 Whitney Biennial.  Perez selected a slate of Plaintiff's work to be included in the exhibition and

submitted them to the Whitney's main curator, Larry Rinder, and almost all of them were included with the exhibition.

75.     Perez left the Whitney Museum some time after the Biennial in 2002 and founded his own art gallery in San Francisco, the Ratio 3 Gallery.  Perez contacted Plaintiff from San Francisco, informed her of his new gallery business and asked that Plaintiff be his first featured artists (one of three others) – Perez wanted to use a photograph already in his possession (one given to him by Plaintiff at the time of the Refusalon exhibition).  Plaintiff agreed and traveled to San Francisco to attend the exhibition.  A short time after Ratio 3's initial exhibition, Perez ended his working relationship with Plaintiff and began to work predominantly with McGinley.

76.     In or about December of 2004, at the Nada Art Fair in Miami, Plaintiff met Perez by happenstance at his Ratio 3 Gallery booth in the fair.  Plaintiff noticed a color photo by McGinley being featured in the Ratio 3 booth with an "artist brush-stroke"[13] and texture style (the grain of the film) similar to her own black and white photos.  Recognizing the style, Plaintiff stated to Perez that there was a similarity to her own work.

77.     Plaintiff and Perez crossed paths a few more times until 2007, when Plaintiff was made aware of the infringing "Irregular Regulars" photo included in the McGinley Images.  Upon discovery of the infringing work, Plaintiff confronted Perez directly and informed him that she believed, as well as several other people in the art world, that the "Irregular Regulars" photo was derivative of her own.  Perez was dismissive of the notion and condescending – the infringing behavior apparently continued until Plaintiff's discovery of McGinley's serial infringement in 2010, when Plaintiff discovered the "Go Forth" campaign created for Levi.

---

[13] "[A]n artist's brush strokes are akin to a signature." J.F. HANNAN, *"Digital imaging helps stop art forgeries: Computer program can scrutinize artist brush strokes"* [Chron.com/ Newhouse News Service January 11, 2008], *quoting* Shannon Hughes, Princeton University, *http://www.chron.com/disp/story.mpl/ent/arts/theater/5881727.html*.

78.     Perez openly admits that he works with McGinley during the editing process and helps to select the images from the camera roll produced from McGinley's photography (see audio CD, Exhibit "H").

79.     McGinley has sold his work through Ratio 3 Gallery.  McGinley, Perez and Ratio 3 Gallery have all profited from the sale and distribution of the McGinley Images.


## VIII.   Freire and Team Gallery

80.     Plaintiff was friendly with Jose Freire, owner of the Team Gallery, since 1994.

81.     Upon information and belief, to date McGinley has had approximately 3 solo exhibitions with the Team Gallery which is partially responsible for his success.  Upon information and belief, McGinley has and continues to co-exhibit with other artists, and in the normal day-to-day business is a featured artist in Team Gallery.

82.     One of the McGinley exhibits presented at Team Gallery was a series of photos depicting scenes from a Morrissey concert called "Irregular Regulars" (discussed earlier), those included among the McGinley Images which infringe upon Plaintiff's rights in the Gordon Images.  It was this series (contained in the McGinley Images).  McGinley continues to exhibit with Team Gallery.

83.     Freire had constructive notice that the McGinley Images represented, sold and distributed by the Team Gallery Defendants were derivative of the Gordon Images.  On or about August 29, 2009, Plaintiff sent an email via FaceBook to approximately 60-70 persons within the art world regarding McGinley and the derivative nature of the McGinley Images (Exhibit "F") and inviting them to be a member of a FaceBook group (entitled "The Con Artist") created by Plaintiff for the purpose of discussion of this topic.  One of the recipients was Freire's ex-wife,

Lisa Ruyter.  In this letter, Plaintiff expressed her concern for the similarities between her works (the Gordon Images) and the McGinley Images, and sought feedback from all those contacted.[14] Upon information and belief, Freire had consistent and open contact with his ex-wife at that time.

84.     McGinley has sold his work through Team Gallery.  McGinley, Freire and Team Gallery have all profited from the sale and distribution of the McGinley Images.


### IX. Troublé and Agnes B. Worldwide (ABW)

85.     Troublé first came across Plaintiff and her work in or about July of 2000 at Xavier LaBoulbene Gallery, where Plaintiff was exhibiting in a solo show.  At that time, even offered to purchase works from Plaintiff.  Troublé is very familiar with Plaintiff's work, including, upon information and belief, the Gordon Images.

86.     In 2008, after Plaintiff discovered McGinley's infringing works, Plaintiff began investigating those works being exhibited by Troublé and discovered McGinley Images which were both blatant and subtle derivations of the Gordon Images.

87.     McGinley has sold his work in various forms through the ABW Defendants both in the United States as well as overseas.  Most recently, ABW has been distributing a book within the US entitled "Sun and Health", published by Agnes B. Agnes B. Worldwide, within the United States which features some of the infringing McGinley images (see Exhibit "I").  Upon information and belief, ABW Defendants have also distributed clothing with prints of some of the infringing McGinley Images for additional profit.  McGinley, Troublé and ABW have all profited from the sale and distribution of the McGinley Images.

[14] Plaintiff received many responses, including feedback from two of the biggest critics in the art world, Arthur Danto and Dan Cameron, both of whom exclaimed the McGinley Images as derivative of Plaintiff's Gordon Images. (See Exhibit "G").

## X.  Peter Halpert and Peter Hay Halpert Fine Art

88.     Halpert became aware of Plaintiff's work through a mutual acquaintance, Wayne Northcross.  In or about the latter part of 2004, Northcross referred Plaintiff to Halpert and the Halpert Gallery by email, and requested that Plaintiff deliver (electronically) samples of her work along with prices under the representation that originals would be purchased.  Plaintiff did so, submitting approximately 10 or so images.

89.     Plaintiff never received any response from Halpert or the Halpert Gallery. However, aware of Plaintiff and her work, he still represented McGinley, selling many of the infringing McGinley Images "exclusively, worldwide, for 5 years" (Email marketing letter from the Halpert Gallery, annexed hereto as Exhibit "G").

90.     As a gallery owner selling photography art (and therefore very familiar with the field of photographic art and the very few artists who produce in this particular genre), when Plaintiff provided Halpert with her images, the Halpert Defendants, at that point, knew or should have known or recognized the derivative nature of the McGinley Images they were selling.  Most recently, the Halpert Gallery advertised its exhibition of McGinley works which include one or more of the infringing McGinley images (Exhibit "G").


## FIRST CLAIM FOR RELIEF
### (Copyright Infringement, 17 U.S.C. §§ 101 et seq. – Against All Defendants)

91.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90 inclusive, as though fully set forth herein.

92.     Plaintiff owns copyright interests in the Gordon Images (attached hereto as Exhibit "A"), which are original preregistered copyrighted works under the laws of the United States.

93.     Plaintiff has the exclusive right to prepare derivative works based upon the copyrighted Gordon Images pursuant to 17 U.S.C. § 106(2).

94.     The Defendants' copying, downloading, use, modification, reproduction, display and distribution of elements of the Gordon Images standing alone, and as embodied in the Gordon Images, including without limitation, the ideas, expression of concepts, themes, compositions, messages, and all other elements contained therein and all derivatives thereof, constitutes a violation of the United States Copyright Act, Title 17 U.S.C. §§501(a), 106(1), 106(2), 106(3), 106A(a)(1) and 113(a), and all Defendants were acting as infringers within the meaning of 17 U.S.C. §§ 104 and 501(a).

95.     By all the Defendants' participation in the creation, production, distribution, use, and exploitation of the McGinley Images, Defendants knowingly and willfully infringed, authorized others to infringe, and will continue to infringe Plaintiff's copyright in the Gordon Images and Plaintiff's beneficial interest in the Gordon Images.

96.     As a proximate result of Defendants' copyright infringement, Plaintiff has suffered and will continue to suffer irreparable injury, some of which cannot be compensated in money damages if such wrongful conduct continues.

WHEREFORE, Plaintiff is entitled to and prays for relief as follows:

    a.   A permanent injunction, pursuant to 17 U.S.C. § 502, enjoining all Defendants, their officers, agents, employees, licensees, assigns, distributors, sub-distributors,

and all persons acting in concert with them, from engaging in such further violations of the Copyright Act;

b.  A permanent injunction enjoining all Defendants, their officers, agents, employees, licensees and assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in or authorizing the production, copying, distribution and/or exploitation of the McGinley Images;

c.  Recovery from all Defendants of the damages, including pre-judgment interest, Plaintiff sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged hereinabove pursuant to 17 U.S.C. §504(b), in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial;

d.  The maximum statutory damages in the amount of $30,000.00 per infringement, and/or $150,000.00 per willful infringement pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper under 17 U.S.C. § 504(c).  Plaintiff is further entitled to their attorney's fees and full costs pursuant to 17 U.S.C. § 505; and

e.  For such other and further relief and remedies available under the Copyright Act,17 U.S.C. §§ 101 et seq., and/or for which the Court may deem just and proper, including punitive damages.


### SECOND CLAIM FOR RELIEF
**(Contributory Infringement – Defendants McGinley, Perez, Freire, Troublé, Ratio 3 Gallery, Team Gallery and Agnes B. Worldwide)**

97.  Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 90 inclusive, as though fully set forth herein.

32

98.     Upon information and belief, McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery, each individually and/or in concert with the other named Defendants, encouraged, induced, or materially contributed to, the infringement of Plaintiff's copyrightable work, and of Plaintiff's beneficial interest in the Gordon Images, in that:

      i.     McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery each by his/her/itself, or through others, used, sold, distributed, and/or exploited some or all of the McGinley Images; and

      ii.     upon information and belief, McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery, each by his/her/itself, or though others, helped produce, develop, use, sell and distribute some or all of the McGinley Images; and

      iii.     upon information and belief, McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery have further acted or participated in the international use, sale and/or distribution of some or all of the McGinley Images.

99.     Upon information and belief, the actions of McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery were performed with actual and/or constructive knowledge of Plaintiff's rights and interests.

100.     McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery are jointly and severally liable for contributory copyright infringement.

WHEREFORE, Plaintiff is entitled to and prays for relief as follows:

a. A permanent injunction, pursuant to 17 U.S.C. § 502, enjoining McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery, their officers, agents, employees, licensees, assigns, distributors, and all persons acting in concert with them, from engaging in such further violations of the Copyright Act;

b. A permanent injunction enjoining McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery, their officers, agents, employees, licensees, assigns, distributors, and all persons acting in concert with them, from engaging in or authorizing the production, reproduction, copying, use, distribution, sale, exploitation, advertising, and/or promotion of the McGinley images;

c. Recovery from McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery of the damages, including pre-judgment interest Plaintiff sustained and will sustain, and any income, gains, profits, and advantages obtained by McGinley, Perez, Freire, Troublé, Halpert, Ratio 3 Gallery, Team Gallery, Agnes B. Worldwide and Halpert Gallery as a result of their wrongful acts alleged herein above pursuant to 17 U.S.C. § 504(b), in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial;

d. The maximum statutory damages in the amount of $30,000.00 per infringement, and/or $150,000.00 per willful infringement pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper under 17 U.S.C. § 504(c). Plaintiff is further entitled to their attorney's fees and full costs pursuant to 17 U.S.C. § 505; and

e.   For such other and further relief and remedies available under the Copyright Act, 17 U.S.C. §§ 101 et seq., and/or for which the Court may deem just and proper, including punitive damages.

## THIRD CLAIM FOR RELIEF
### (Vicarious Copyright Infringement - Against all Defendants)

101.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 90 inclusive, as though fully set forth herein.

102.    Defendants had the right, authority, and the ability to control or supervise McGinley's actions, failures, and omissions which violated Plaintiff's copyright and beneficial interest in the Gordon Images.

103.    Upon information and belief, Defendants had knowledge of Plaintiff's rights and interests in the Gordon Images during the creation, development, production, use, sale distribution and exploitation of the McGinley Images.

104.    Defendants obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement.

WHEREFORE, Plaintiff is entitled to and prays for relief as follows:

a.   A permanent injunction, pursuant to 17  U.S.C. §502, enjoining Defendants, their officers, agents, employees, licensees, assigns, distributors, and all persons acting in concert with them , from engaging in su ch further violations of the Copyright Act;

b.   A permanent injunction enjoining Defendant s, their officers , agents, employees, licensees an d assign s, dist ributors, sub-distributors,   and all p ersons acting  in

concert with them , from engaging in or authorizing the production, copying, distribution, use, sale and/or exploitation of the McGinley Images;

c. Recovery from Defendants of the dam ages, including pre-judgm ent interest Plaintiff sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged hereinabove pursuant to 17 U.S.C. §504(b), in an am ount which cannot yet be fully ascertained, but which shall be assessed at the time of trial;

d. The maximum statutory da mages in th e amount of $30,000.00 per infringem ent, and/or $150,000.00 per willful infringement pursuant to 17 U.S.C. §504(c), o r for such other amount as may be proper under 17 U.S.C. §504(c). Pl aintiff is further entitled to their attorney's fees and full costs pursuant to 17 U.S.C. §505; and

e. For such other and further relief and rem edies available under the Copyright Act, 17 U.S.C. §§ 101 et seq., and/or for which the Court may deem just and proper.

## FOURTH CLAIM FOR RELIEF
### (Breach of Implied Contract – Against Defendants Perez and Ratio 3)

105.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 90 inclusive, as though fully set forth herein.

106.    Upon information and belief, Plaintiff and Ration 3 Defendants have never executed a written agreement.  However, Ratio 3 Defendants acted, with Plaintiff's consent, to represent Plaintiff and some or all of the Gordon Images for the purpose of sale and/or license, and to represent Plaintiff for the purpose of the license of services.  As stated earlier, Perez (and therefore Ratio 3 Gallery) had access to all of Plaintiff's work as of 2002/2003, which included most of the Gordon Images at that time.

107.    An implied contract, which included, but was not limited to, an implied agreement of good faith and fair dealing, was entered into by and between the Ratio 3 Defendants and Plaintiff.  This implied contract became effective between Perez and Plaintiff at the time in which Perez submitted the Gordon Images for exhibition in the 2002 Whitney Biennial, and again between Ratio 3 Defendants and Plaintiff at the time in which the Gordon Images were exhibited at the Ratio 3 Gallery.  These implied contracts are enforceable between them.  These implied contracts established that Plaintiff owns all the rights in and to the Gordon Images, including control over uses and the preparation of derivative works, which constitute equitable and/or beneficial ownership in the Gordon Images, and granted the Ratio 3 Defendants a license only to represent Plaintiff and the Gordon Images as an agent/representative for the purpose of sale and license of the Gordon Images and Plaintiff's services.

108.    The implied contract merely authorized the Ratio 3 Defendants to act on behalf of Plaintiff to seek and engage buyers and licensees of the Gordon Images, and/or to act as agent/representative for/of Plaintiff to secure at-will employment with third parties for the purpose of producing works-made-for-hire.  The implied contract expressly reserves to Plaintiff all rights not granted to the Ratio 3 Defendants, which includes the right to prevent adaptation or derivative works based upon the Gordon Images.  And such rights would survive termination of the relationship between Plaintiff and the Ratio 3 Defendants.

109.    The implied contract includes, as a matter of law, any promise which a reasonable person in the position of the Plaintiff would be justified in believing was included.  Such promises include:

     i.    Ratio 3 Defendants' promise to protect Plaintiff's rights in the Gordon Images;

ii.     Ratio 3 Defendants' promise to Plaintiff not to, themselves or through others,

reproduce or duplicate the Gordon Images, produce works which were derived

from the Gordon Images, or tolerate, approve, encourage, engage or aid other

parties to reproduce, duplicate and/or produce works derived from the Gordon

Images without Plaintiff's permission;

iii.    Ratio 3 Defendants' promise to not conceal facts and actions which affect

Plaintiff's rights, interests and opportunities related to the Gordon Images;

iv.     Ratio 3 Defendants' promise that any opportunity, benefit, or compensation

derived from the Gordon Images or works derived from the Gordon Images would

necessarily include Plaintiff; and

v.      Ratio 3 Defendants' promise to, themselves or through others, not explicitly

represent or represent by implication that Plaintiff has consented to the creation of

derivative works based upon the Gordon Images.

110.    The resulting implied contract does not grant any adaptation, derivative or other

similar rights to the Ratio 3 Defendants, nor does it permit the exploitation of the imagery,

concepts, themes, compositions, any characterizations, ideas and expressions contained in the

Gordon Images, whether or not copyright protectable, if such exploitation involves any actions

which exceed the scope of expressly implied contractual conditions.

111.    Plaintiff has the right under the law to enforce Ratio 3 Defendants' compliance

with its implied contractual promise given in consideration for their license to represent, whether

or not for a commission fee, Plaintiff and the Gordon Images, and to enforce Ratio 3 Defendants

to refrain from any act which would adapt or alter the Gordon Images in original form or

duplication, create derivative works based upon the Gordon Images, or approve, encourage,

engage or aid other parties to adapt, alter or create derivative woks based upon the Gordon

Images, or permit its assigns to approve, encourage, engage or aid other parties to adapt, alter or

create derivative woks based upon the Gordon Images in any manner.

112.    Upon information and belief, the Ratio 3 Defendants have violated and breached

the implied contract and its terms, including the implied duty of good faith and fair dealing, in

the following manner:

     i.    the representation, sale and distribution of derivative works based upon the

         Gordon Images to private collectors or individuals, public organizations, and

         commercial entities;

    ii.    the failure to account to Plaintiff the financial benefits and income which the

        Ratio 3 Defendants and McGinley derived from its implied sub-licensing, consent

        and permission granted to third parties to utilize works derived from the Gordon

        Images;

   iii.    the failure to protect Plaintiff's equitable and/or beneficial/financial interest in the

        Gordon Images, and the toleration of, and contribution to, the infringement by

        other Defendants authorized, expressly or tacitly, by the Ratio 3 Defendants to

        assist in exploiting both copyright protectable as well as non-protectable ideas and

        elements in the Gordon Images;

    iv.    exceeding the contractual rights to exploit the Gordon Images, by distribution,

        and exploitation of an unauthorized adaptation and derivation of the Gordon

        Images (i.e. the Levi "Go Forth" and "Opening Ceremony" campaigns), which is

        based upon, inspired by, and embodies the Gordon Images, and which unfairly

        competes with Plaintiff's property;

v.   distributing and exploiting, along with licensee partner Levi, and with others including, but not limited to, Troublé, Agnes B. Worldwide, and (upon information and belief) Freire and Team Gallery, the McGinley Images which is based upon, inspired by, and embodies the expression of ideas and elements contained in the Gordon Images;

vi.  licensee partners Levi, and with others including, but not limited to, Troublé, Agnes B. Worldwide, and (upon information and belief) Freire and Team Gallery, the McGinley Images which embodies elements of the Gordon Images, which breaches the good faith and fair dealing provision inherent in the implied contract between Ratio 3 Defendants and Plaintiff;

vii. receiving profits, unauthorized financial benefits and/or royalties which Plaintiff was otherwise entitled to from the implied sub-licensing for the use, the adaptation, and the preparation of a work derivative of the Gordon Images by all Defendants and others which breaches Ratio 3 Defendants' duty of good faith and fair dealing;

viii. tolerating, aiding, contributing to, and/or licensing others acting on their authority to reproduce, sell, perform, display, distribute, market, advertise, promote, and/or otherwise exploit the Gordon Images in a manner exceeding the authority under the implied contract; and

ix.  breaching its obligation to state "Based on the work of Janine Gordon" on all McGinley Images derived from the Gordon Images, and instead distributing the derivative McGinley Images with the false attribution of "by Ryan McGinley" or some other similar or other representation which explicitly or impliedly states or

gives the impression that the McGinley Images are original works created solely by McGinley.

113.    The Ratio 3 Defendants' actions constitute a breach of the covenant of good faith and fair dealing which requires The Ratio 3 Defendants to refrain from taking any action to injure, or to interfere with, the right of Plaintiff to receive the benefit or consideration from the Gordon Images or provided for by the implied contract.

114.    The breaches of the implied contract and the duty of good faith and fair dealing constitute a failure of consideration on the part of The Ratio 3 Defendants, as well as wrongful actions and breaches which are material and go to the root of the implied contract between the parties, and which are in addition to, and independent of, The Ratio 3 Defendants' infringement in violation of the Copyright Act.

115.    All conditions precedent have occurred or have been performed, waived or otherwise satisfied.

116.    As a consequence of the foregoing, Plaintiff has been required to retain the undersigned counsel and is obligated to pay said counsel a reasonable fee for their services.

117.    The Ratio 3 Defendants are liable for their breaches of the implied contract, as well as for the actions by all the Defendants and other persons or entities, including, but not limited to, licensees, distributors, third party service providers, and sub-distributors of the derivative McGinley Images.

WHEREFORE, Plaintiff is entitled to and prays for relief as follows:

a.   For compensatory and consequential damages, according to proof in an amount determined at trial, together with interest thereon as provided by law;

b.  an accounting and restitution to Plaintiff of all gains, profits and consideration in any form The Ratio 3 Defendants, as well as other persons or entities authorized by The Ratio 3 Defendants, have derived from their implied sub-licensing, production, distribution and exploitation of the derivative McGinley Images, and of the allied and ancillary rights related thereto from The Ratio 3 Defendants' breaches of the implied contract and their duty of good faith and fair dealing; and

c.  For such other and further relief and remedies available which the Court may deem just and proper, including attorney's fees and costs as provided by the Settlement and License Agreements, and for punitive damages.

## FIFTH CLAIM FOR RELIEF
### (Violation of New York General Business Law Article 22A §§ 349, 350(A) and Article 24 § 360(L) against All Defendants)

118.    Plaintiff re-alleges and incorporates herein by reference the allegations set for the in paragraphs 1 through 90, inclusive as though fully set forth herein.

119.    Upon information and belief, Defendants hav e intentionally omitted from public advertising that the McGinley Im ages are base d on the Gordon Im ages, and that they have not licensed from Plaintiff the right to distribute the McGinley Images, and these misrepresentations to the public are deceptive and contrary to the public interest.

120.    Defendants falsely advertised and dissem inated in multi-m edia print and electronic dissem ination in the State of       New York, t hroughout the United States, and internationally, materially misleading information, namely that the Mc Ginley Images were "b y Ryan McGinley" (or so me other representation which expressly stated or im plied the McGinley Images were solely created by McGinley) and omitted from such multi-media dissemination any attribution to Plaintiff and the Gordon Images.

42

121.   Upon information and belief, all of Defenda nts' misrepresentations to the general public are calcu lated to deceive Plaintiff's pot    ential licensees, custo  mers, consum ers, and members of the public.

122.   Defendants' wrongful conduct, acts, and omissions alleged hereinabove constitute violations of New York law, to wit:

    a.   unlawful, unfair business practices and unfair competition under New York General Business Law Article 22(A) §§349 and 350(A) which provides in pertinent part:

        §349: Deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in the State are hereby unlawful.

        §350(A): False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this State is hereby declared unlawful.

    b.   Dilution of Plaintiff's name under New York General Business Law Article 24 §360(L), which provides in pertinent part:

        Injury to business reputation; dilution.  Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name shall be a ground for injunctive relief in cases of infringement or in cases of unfair competition, notwithstanding the absence of competition between the parties

43

or the absence of confusion as to the source of goods or services.

123.    As a proximate result of Defendants' conduct, acts and omissions, Defendants have been unjustly enriched and Plaintiff is entitled to recover any income, gains, compensation, profits and advantages obtained, received or to be received by Defendants, resulting from the exploitation of Plaintiff's rights in and to elements used in the McGinley Images; and Plaintiff prays for an order requiring Defendants to render an accounting.

124.    As a proximate result of Defendants' wrongful conduct, acts and omissions alleged hereinabove, Plaintiff has been injured, and Defendants will be unjustly enriched, in an amount that shall be assessed at trial for which damages and/or restitution and disgorgement is appropriate, including a declaration by the Court that Defendants are the constructive trustee for the benefit of Plaintiff and an order that Defendants convey to Plaintiff all proceeds received by Defendants as a result of their wrongful exploitation of the McGinley Images.

125.    Defendants' wrongful conduct, acts and omissions have proximately caused and will continue to cause Plaintiff substantial injury and damage including, without limitation, loss of customers, dilution of goodwill, injury to Plaintiff's reputation, and diminution of the value of Plaintiff's rights.  The harm this wrongful conduct will cause to Plaintiff is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if such wrongful conduct is allowed to continue without restraint.

WHEREFORE, Plaintiff is entitled to and prays for relief as follows:

a.    Permanently enjoin Defendants, their officers, agents and employees, licensees, assigns, distributors, and sub-distributors, and all persons acting in concert with them, from engaging in such further unfair business practices and

unfair competition under New York General Business Law Article 22A §§ 349 and 350(A) and Article 24 § 360(L);

b.  Punitive damages in an amount sufficient to punish Defendants, to be assessed at trial. Plaintiff has no adequate remedy at law with respect to Defendants' unlawful conduct, acts and omissions which were conducted in an intentional, malicious, calculated and oppressive manner in conscious disregard for Plaintiff's rights, and knowingly injured Plaintiff;

c.  For the imposition of a constructive trust for the benefit of Plaintiff on any and all proceeds received and to be received by Defendants, their licensees, assigns, employees, distributors, or sub-distributors;

d.  For restitution to Plaintiff of all proceeds received and to be received by Defendants, their licensees, assigns, employees, distributors, or sub-distributors;

e.  For compensatory and consequential damages according to proof in an amount to be determined at trial; and

f.  For such other and further relief and remedies available under New York General Business Law Article 22A §§ 349, 349(h), and 350 and Article 24 § 360(L) which the Court may deem just and proper.

### SIXTH CLAIM FOR RELIEF
**(Breach of Implied Duty of Confidentiality/Constructive Trust – Against Perez and Ratio 3)**

126.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 90 inclusive, as though fully set forth herein.

127.   Plaintiff and Ration 3 Defendants are parties to an enforceable agreement (the implied contract) pursuant to which Plaintiff granted a license Ratio 3 Defendants in exchange for a commission fee.

128.   Plaintiff owns, as a result of its reservation of substantial rights in the Gordon Images, a beneficial and/or equitable interest in the Gordon Images.

129.   Plaintiff and Ratio 3 Defendants are parties to an enforceable implied agreement that governs Ratio 3 Defendants' rights relative to Plaintiff's visual property, copyright, as well as to non-copyrightable ideas and elements in the Gordon Images, and that due to the special circumstances described herein, a trusting and confidential relationship arose between Plaintiff and Ratio 3 Defendants.

130.   A special relationship arose between Plaintiff and Ratio 3 Defendants from:

    a.   Ratio 3 Defendants' express and implied promises to not modify, adapt, create works derived from, induce, tolerate and/or aid that modification, adaptation and/or creation of works derived from the Gordon Images;

    b.   Plaintiff's reservation of ownership rights, creative control, and a beneficial interest in the Gordon Images;

    c.   Plaintiff's transfer of valuable licensing rights in the Gordon Images in reliance upon Ratio 3 Defendants' promises;

    d.   Ratio 3 Defendants' superior position and knowledge regarding Ratio 3's and the other Defendants' exploitation of the McGinley Images' use of the Gordon Images, which knowledge being not readily available to, or concealed by Ratio 3 Defendants from, Plaintiff;

46

e.  Plaintiff's and Ratio 3 Defendants' ongoing mutual interest and potential benefit from any adaptation of and/or work derived from the Gordon Images;

f.  Plaintiff's reposing trust in Ratio 3 Defendants, who occupied a superior position to Plaintiff, regarding what actions to take to protect Plaintiff's rights;

g.  Ratio 3 Defendants' making partial and ambiguous statements to Plaintiff suggesting mutual interest and joint action, with the consequential assumption by Ratio 3 Defendants of the duty to fully disclose its actions and information in its possession to Plaintiff;

h.  Upon information and belief, Ratio 3 Defendants' abuse of Plaintiff's confidence by financially benefiting from the sale, license and distribution of the McGinley Images; and

i.  Upon information and belief, Ratio 3 Defendants' breaching Plaintiff's trust when Ratio 3 Defendants failed to maintain a suit for infringement upon the Gordon Images against the other Defendants and other persons or entities and, instead, Ratio 3 Defendants' tolerating and participating in the infringement by an unauthorized derivative work, which directly competed with Plaintiff.

131.    Upon information and belief, Ratio 3 Defendants engaged in the deliberate and unjustified harm to, and/or destruction of, Plaintiff's property rights which Plaintiff had entrusted to Ratio 3 Defendants in the implied contract.

132.    Upon information and belief, Ratio 3 Defendants' actions and breaches of confidence resulted in Plaintiff's delay in protecting its rights and further damaged and appropriated for themselves the value of adaptation rights in the Gordon Images without any compensation to Plaintiff for any derivative works.

133.     As a direct and proximate result of Ratio 3 Defendants wrongful conduct, acts and omissions alleged hereinabove, Plaintiff has been damaged, and Ratio 3 Defendants will be unjustly enriched during the pendency of this action, in an amount that shall be assessed at trial for which damages and/or restitution and disgorgement is appropriate.

134.     Such damages and/or restitution and disgorgement should include a declaration by the Court that Ratio 3 Defendants is the constructive trustee for the benefit of Plaintiff and an order that Ratio 3 Defendants convey to Plaintiff all proceeds received by Ratio 3 Defendants that are attributable to their wrongful exploitation of the McGinley Images.

WHEREFORE, Plaintiff is entitled to and prays for relief as follows:

    a.  For an order granting compensatory and consequential damages, according to proof in an amount determined at trial, together with interest thereon as provided by law;

    b.  For the imposition of a constructive trust, and for an accounting and restitution to Plaintiff of all gains, profits and advantages Ratio 3 Defendants has derived from their sale, license, distribution and exploitation of the McGinley Images; and

    c.  For such other and further relief and remedies available which the Court may deem just and proper, including punitive damages.

## ON ALL CLAIMS FOR RELIEF

135.   For Plaintiff's reasonable costs and attorney's fees; and

136.   For interest on all sums awarded Plaintiff.

## JURY TRIAL DEMAND

Plaintiff hereby request a trial by jury on each claim for relief alleged in the Complaint.

DATED this 22nd day of March, 2011.

Respectfully,

Joseph J. Mainiero, Esq.
305 Broadway, Ste. 402
New York, NY 10007
Phone: 212.267.6611
Fax:     212.732.0888
Email: joe@jjmlegal.com

Antony Hilton, Esq.
305 Broadway, Ste. 402
New York, NY 10007
Phone: 212.267.6611
Fax:     212.732.0888
Email: THilton@jjmlegal.com

Index No.:11 CIV 1001                    Year:                    Hon.:
Docket No.:
File No.:                                CSMS:

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### JANINE GORDON,

*Plaintiff(s)/Petitioner(s),*

*-against-*

### RYAN MCGINLEY
### LEVI STRAUSS & CO. INC.
### CHRISTOPHER PEREZ
### RATIO 3 GALLERY
### JOSE FREIRE
### TEAM GALLERY, INC.
### AGNÉS ANDRÉE MARGUERITE TROUBLÉ a.k.a.
### "AGNES B."
### AGNES B. WORLDWIDE, INC. a.k.a. "CMC Agnes B."
### PETER HALPERT
### PETER HAY HALPERT FINE ART

*Defendant(s)/Respondent(s)*

## AMENDED COMPLAINT

### NOTICE OF ENTRY
Sir: PLEASE TAKE NOTICE that the within is a true certified copy of a

duly entered in the office of the clerk of the within named court on:

Dated:
            Yours, etc.
            **Law Offices of Joseph J. Mainiero**

### NOTICE OF ENTRY
Sir: PLEASE TAKE NOTICE that

of which the within is a true copy will be presented for settlement to
Hon.
on of the judges of the within named Court at:

on the    day of       , 20   , at          am    pm.
Dated:
            Yours, etc.
            **Law Offices of Joseph J. Mainiero**

*Service of a copy of the within is hereby admitted.*

… … … … … … … … … … … … … … … … … … … … … …
*Attorney(s) for*



TO:

Compliance pursuant to 22 NYCRR §130-1.1a

To the best of the undersigned's knowledge,
information and belief formed after an inquiry
reasonable under the circumstances, the within
document(s) and contentions contained herein are not
frivolous as defined in 22 NYCRR §130-1.1a.

By: _____
Joseph J. Mainiero, Esq.
Antony Hilton, Esq.
Law Offices of Joseph J. Mainiero
*Attorneys for*
305 Broadway, Ste. 402
New York, NY 10007