**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANINE GORDON, | 11-CV-1001 (RJS) |
| Plaintiff, | |
| v. | |
| RYAN MCGINLEY *et al*., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**:

TABLE OF AUTHORITIES. ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT. ..................................................................................................... 3

    I.    The Copyright Claims Should Be Dismissed. ....................................... 3

        A.    There is No Direct Infringement as a Matter of Law. ............................... 3

            (1)    The Court Can Assess Substantial Similarity on a Motion To Dismiss. ................................................................................................ 3

            (2)    Applicable Second Circuit Precedent Demonstrates That Plaintiff's Infringement Claims Are Baseless. ................................. 4

            (3)    The Images Are Not Substantially Similar As A Matter Of Law. ............................................................................. 8

            (4)    Plaintiff Improperly Compares Photographs to Videos. ............... 11

        B.    The Contributory and Vicarious Infringement Claims Should Be Dismissed. ................................................................... 15

            (1)    Plaintiff's Contributory Copyright Infringement Claim Fails. ...... 16

            (2)    Plaintiff's Vicarious Copyright Infringement Claim Also Fails. ............................................................................................. 18

    II.    Plaintiff's State Law Claims Should Be Dismissed With Prejudice. .................... 19

        A.    Summary of Plaintiff's State Law Claims . .............................................. 19

        B.    Plaintiff's State Law Claims Should be Dismissed with Prejudice Because They are Completely Preempted by Federal Copyright Law. ...... 21

            (1)    Plaintiff's Fifth Claim for False Advertising and Trademark Dilution Under NYGBL Is Preempted and Should be Dismissed with Prejudice. ............................................................ 22

(2)    Plaintiff's Implied Contract and Confidentiality Claims Against the Ratio 3 Defendants Are Preempted and Should be Dismissed with Prejudice.............................................................. 23

C.    Complete Preemption Requires Dismissal on the Merits. ........................ 24

D.    Plaintiff's State Law Claims Also Fail to Plead Claims . ......................... 25

(1)    Plaintiff Fails to State a Claim for False Advertising Under NYGBL §§ 349 and 350 Against Any Defendant . ..................... 25

(2)    Plaintiff Fails to State a Claim for Trademark Dilution Under the NYGBL.......................................................... 26

(3)    Plaintiff Fails to State Claims for Breach of Implied Contract and Breach of Implied Duty of Confidentiality/Constructive Trust Against the Ratio 3 Defendants. .......................................... 27

E.    Plaintiff's Implied Contract and Confidentiality Claims Against the Ratio 3 Defendants Are Barred by the Statute of Frauds. .................. 28

CONCLUSION. ...................................................................................................... 29

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>                                                                 <u>Page(s)</u>

*Agence France Press v. Morel*,
    2011 WL 147718 (S.D.N.Y. Jan. 14, 2011) . ................................................................... 18

*Allen v. Scholastic*,
    739 F. Supp. 2d 642 (S.D.N.Y. 2011) ............................................................................. 3

*Andersson v. Sony Corp.*,
    No. 96 Civ. 7975 (RO), 1997 WL 226310 (S.D.N.Y. 1997) ............................................ 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................. 15, 16, 18, 19

*Berry v. Deutsche Bank Trust Co. Americas*,
    No. 07 Civ. 7634(WHP), 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008) ......................... 21

*Bill Diodato Photography, LLC v. Kate Spade, LLC*,
    388 F. Supp. 2d 382 (S.D.N.Y. 2005) ......................................................................... 5, 6

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)................................................................................ 21, 24, 25

*BroadVision Inc. v. General Elec. Co.*,
    No. 08 Civ. 1489, 2008 WL 4684114 (S.D.N.Y. Oct. 15, 2008). ............................. 23, 24

*Cabell v. Sony Pictures Entm't, Inc.*,
    714 F. Supp. 2d 452 (S.D.N.Y. 2010) ............................................................................. 7

*Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*,
    150 F.3d 132 (2d Cir. 1998)............................................................................................ 24

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987).......................................................................................................... 24

*Chambers v. Time Warner, Inc.*,
    282 F.2d 147 (2d Cir. 2002) ............................................................................................. 3

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..................................................................................................... 22, 23

*De Batuc v. Spelling Television, Inc.*,
    CV98-6002 (C.D. Cal. Jan. 26, 1999) ............................................................................ 14

*Do Denim, LLC v. Fried Denim, Inc.*,
    634 F. Supp. 2d 403 (S.D.N.Y. 2009) ........................................................................... 26

*Editorial Photocolor Archives, Inc. v. Granger Collection*,
    61 N.Y.2d 517 (1984) . .................................................................................................... 24

*Edward B. Beharry & Co. v. Bedessee Imports, Inc. et al.*,
    No. 09-CV-0077(DLI)(JMA), 2010 WL 1223590 (E.D.N.Y. Mar. 23, 2010). ............... 26

*Eliya Inc. v. Kohl's Dep't Stores*,
    82 USPQ2d 1088, 2006 WL 2645196 (S.D.N.Y. Sept. 13, 2006) . ........................... 25, 26

*Faulkner v. Nat'l Geographic Enters. Inc.*,
    409 F.3d 26 (2d Cir. 2005) ............................................................................................. 15

*Feist Publ., Inc. v. Rural Tel. Svc. Co.*,
    499 U.S. 340 (1991). ......................................................................................................... 3

*Fin. Info., Inc. v. Moody's Investors Serv., Inc.*,
    808 F.2d 204 (2d Cir. 1986) ............................................................................................ 24

*Forlenza v. AT&T*,
    No. CV 03-8232 ABC (RNBx),
    2004 U.S. Dist. LEXIS 29549 (C.D. Ca. April 12, 2004). .............................................. 13

*Gordon v. Nextel*,
    345 F.3d 922 (6th Cir. 2003) . ......................................................................................... 13

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) ........................................................................... 25

*Johnson & Johnson v. The Am. Nat. Red Cross*,
    552 F. Supp. 2d 434 (S.D.N.Y. 2008) ........................................................................... 26

*Kaplan v. Stock Market Photo Agency, Inc.*,
    133 F. Supp. 2d 317 (S.D.N.Y. 2001) ................................................................... 4-6, 12

*Key, Inc. v. Ultima Diamonds, Inc.*,
    2010 WL 3291582 (S.D.N.Y. Aug. 17, 2010) ............................................................... 18

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995) ............................................................................................... 3

*Kroencke v. The Interpublic Group of Cos., Inc.*,
    99 Fed. Appx. 339 (2d Cir. 2004) ..................................................................................... 5

iv

*Le Book Pub., Inc. v. Black Book Photography, Inc.*,
    418 F. Supp. 2d 305 (S.D.N.Y. 2005) .......................................................... 26

*Leigh v. Warner Bros., Inc.*,
    212 F.3d 1210 (11th Cir. 2000). .................................................................. 12

*MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*,
    2004 WL 434404 (S.D.N.Y. Mar. 8, 2004). ................................................ 26

*Matthew Bender & Co., v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998)......................................................................... 16

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ........................................................................ 26

*Medical Educ. Dev. Svcs., Inc. v. Reed Elsevier Group, PLC*,
    No. 05 Civ. 8665(GEL), 2008 WL 4449412 (S.D.N.Y. 2008) ................... 23

*Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.*,
    65 N.Y.2d 75 (1985) .................................................................................... 29

*Pavlica v. Behr*,
    397 F. Supp. 2d 519 (S.D.N.Y. 2005) .......................................................... 15

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010).......................................................................... 3, 4

*Poon v. Roomorama, LLC*,
    No. 09 Civ. 3224, 2009 WL 3762115 (S.D.N.Y. Nov. 10, 2009) ................. 28

*Price v. Fox Entm't Group, Inc.*,
    473 F. Supp. 2d 446 (S.D.N.Y.2007)........................................................... 24

*Psihoyos v. Nat'l Geographic Soc'y*,
    409 F. Supp. 2d 268 (S.D.N.Y. 2005)................................................. 4, 5, 8, 10

*Ringgold v. Black Enter. Television, Inc.*
    126 F. 3d 70 (2d Cir. 1997)......................................................................... 13

*Rosciszewski v. Arete Assocs., Inc.*,
    1 F.3d 225 (4th Cir. 1993) . ................................................................... 24, 25

*Sandoval v. New Line Cinema Corp.*,
    147 F.3d 215 (2d Cir. 1998)......................................................................... 13

*Securitron Magnalock Corp. v. Schnabolk*,
     65 F.3d 256 (2d Cir. 1995)................................................................... 25

*Smith v. Local 819 I.B.T. Pension Plan*,
     291 F.3d 236 (2d Cir. 2002) .............................................................. 15

*Smith v. Weinstein*,
     578 F. Supp. 1297 (S.D.N.Y. 1984) ................................................... 23

*Softel, Inc. v. Dragon Med. & Sci. Commc'n's, Inc.*,
     118 F.3d 955 (2d Cir. 1997)................................................................. 18

*Sports Traveler, Inc. v. Advance Mag. Publishers, Inc.*,
     96 Civ. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) .................................. 25

*Stadt v. Fox News Network LLC*,
     719 F. Supp. 2d 312 (S.D.N.Y. 2010) .......................................... 22, 23, 26, 28

*Straus v. DVC*,
     484 F. Supp. 2d 620 (S.D. Tex. 2007) .............................................. 14

*Tannenbaum v. Corbis Sygma*,
     No. 02 Civ. 5066, 2002 WL 31778813 (S.D.N.Y. Dec. 12, 2002)................................ 24

*Two Kids From Queens, Inc. v. J&S Kidswear, Inc.*,
     2010 WL 475319 (E.D.N.Y. Feb. 8, 2010) ...................................... 18

*Zupan v. Blumberg*,
     2 N.Y.2d 547 (1957) ........................................................................ 29

## Statutes, Rules and Regulations

17 U.S.C. § 101................................................................................. 15

17 U.S.C. § 102(5) ............................................................................. 22

28 U.S.C. § 1367(c). .......................................................................... 24

Fed. R. Civ. P. 8................................................................................. 25

Fed. R. Civ. P. 12(b)(6)....................................................... 1, 3, 15, 16, 19, 25

N.Y. Gen. Oblig. Law § 5-701.......................................................... 29

NYGBL § 349.................................................................................................... 2, 20, 25, 26

NYGBL § 350-a ............................................................................................... 2, 20, 25, 26

NYGBL § 360-l ................................................................................................. 2, 20, 26

Defendants Ryan McGinley, Levi Strauss & Co., Christopher Perez, Ratio 3 Gallery, Team Gallery, Inc., Peter Halpert, and Peter Hay Halpert Fine Arts respectfully submit this memorandum of law in support of their joint motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint (ECF No. 11) of plaintiff Janine Gordon in its entirety.

## PRELIMINARY STATEMENT

This is a copyright infringement action in which plaintiff Janine Gordon, a photographer, claims that no fewer than 150 images allegedly created by a more successful photographer, defendant Ryan McGinley (the "McGinley Images"), infringe the copyrights in more than 135 of her photographs and other images (the "Gordon Images" and, together with the McGinley Images, the "Images"). Under theories of both direct and secondary liability, plaintiff has also dragged many other defendants into this case, including three galleries that exhibited McGinley's works; the principals of two of the galleries; and Levi Strauss & Co., which used certain of the McGinley Images in advertising campaigns.

Plaintiff's copyright infringement claims are frivolous and should be dismissed. Even a cursory comparison reveals that the McGinley Images are not substantially similar to protectable expression in the Gordon Images. In fact, the corresponding Images are vastly *dissimilar* and most of them do not look alike in the slightest. At most, they resemble each other in only the most superficial, abstract, and non-protectable ways. Plainly, however, plaintiff has no claim to ideas as general and unprotectable as, for example, an interracial couple kissing; a person gazing skyward with outstretched arms; or a man riding on a spotted horse. As the Court noted during the pre-motion conference, this dispute is "not a serious one," and the issues presented are "about as basic as it gets." (ECF No. 23, Tr. 10:7-8, 17.) Indeed, as discussed in greater detail below,

courts in this Circuit routinely dismiss claims concerning alleged infringement of photographs where the works at issue are far more similar than the Images in this case.  Because no rational jury could conclude that the McGinley Images are substantially similar to the Gordon Images, Defendants' motion to dismiss the copyright infringement claims should be granted.

Plaintiff also has asserted state law claims against: (1) all defendants for false advertising and trademark dilution under §§ 349, 350-a and 360-l of the New York General Business Law ("NYGBL"); and (2) Perez and Ratio 3 Gallery for "breach of implied contract" and "breach of implied duty of confidentiality/constructive trust."  The state law claims should be dismissed because they are preempted by the Copyright Act and also fail to state claims upon which relief can be granted.  Specifically, the NYGBL §§ 349 and 350-a claims fail as a matter of law because plaintiff does not and cannot allege that defendants engaged in deceptive business practices that caused consumer injury or cognizable harm to the public interest, such as a danger to public health or safety.  The NYGBL § 360-l claim is similarly insufficient because plaintiff has not alleged facts sufficient to establish that she owns a distinctive mark or that there is a likelihood of dilution of such a mark.  Finally, the implied contract and implied duty of confidentiality/constructive trust claims are barred by the statute of frauds, and the latter claim fails to allege the necessary special relationship between the parties.

Accordingly, and as set forth in greater detail below, the Amended Complaint should be dismissed in its entirety, with prejudice and without leave to replead.

## ARGUMENT

**I.**   **The Copyright Claims Should Be Dismissed**

**A.**   **There is No Direct Infringement as a Matter of Law**

A copyright infringement claim should be dismissed unless the plaintiff establishes "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ., Inc. v. Rural Tel. Svc. Co.*, 499 U.S. 340, 361 (1991).  To satisfy the second element, the plaintiff must prove that the defendant actually copied the plaintiff's work, and that the defendant's work is substantially similar to protectable expression in the plaintiff's work. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995).  Because the images annexed to plaintiff's own pleading, along with certain videos referenced in, and integral to, the Amended Complaint (the "Levi's Videos"), conclusively demonstrate the absence of substantial similarity, plaintiff's infringement claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See Allen v. Scholastic*, 739 F. Supp. 2d 642, 645 n.1 (S.D.N.Y. 2011) (granting motion to dismiss infringement claim based on a reading of both works, submitted as exhibits with defendant's moving papers) (citing *Chambers v. Time Warner, Inc.*, 282 F.2d 147, 153 (2d Cir. 2002) (court may consider documents that plaintiffs had knowledge of and relied on in bringing suit)).

### (1)   The Court Can Assess Substantial Similarity on a Motion To Dismiss

The Second Circuit has recently emphasized that substantial similarity can and should be assessed at the motion to dismiss stage.  In *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010)*,* the Second Circuit held that:

> where, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary to make such an evaluation.

*Id.* at 64.  Moreover, the *Gaito* decision makes clear that it is the works themselves that matter, not characterizations of them, whether made by plaintiff herself or contained in stray comments from her "internet supporters."  (Am. Compl. Exh. F.)  Indeed, such idle chatter is irrelevant because

> the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings.  When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works.

*Id.* (internal citations and quotation marks omitted).

Thus, this Court can and should dismiss plaintiff's copyright claims because a visual comparison of the Images plainly shows that they are not substantially similar as a matter of law.

### (2) Applicable Second Circuit Precedent Demonstrates That Plaintiff's Infringement Claims Are Baseless

To assess the allegedly infringing Images, "the Court applies the more discerning ordinary observer test, in which the Court must attempt to extract the unprotectable elements from consideration and ask whether the protectable elements, standing alone, are substantially similar."  *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 274 (S.D.N.Y. 2005).  Infringement of a photograph may only be found if substantial similarity exists between the defendant's work and protectable elements of the plaintiff's work, which "may include posing the subjects, lighting, angle, selection of film and camera, [and] evoking the desired expression, along with other variants."  *Kaplan v. Stock Market Photo Agency, Inc.*, 133 F. Supp. 2d 317, 322 (S.D.N.Y. 2001) (internal quotations omitted; brackets in original).

Because copyright law does not protect an idea, but only a particular expression of that idea, courts disregard and filter out any similarity of ideas between two works, as well as any

similarities that flow directly from the idea or subject matter.  *See, e.g., Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382 (S.D.N.Y. 2005) (dismissing claim where the photographs shared only the unprotectable idea of showing a woman's feet as she sits on a toilet to highlight fashion accessories); *Psihoyos* , 409 F. Supp. 2d  at 268 ("A copyright in a photograph derives from the photographer's original conception of his subject, not the subject itself.") (quotation omitted); *Kaplan*, 133 F. Supp. 2d at 317 (dismissing claim because depicting a businessman contemplating a leap from a tall building is an unprotectable idea).

Courts also routinely hold that works are not substantially similar when their *dissimilarities* substantially outweigh their similarities, thereby giving the works a different "total concept and feel."  *See, e.g., Kroencke v. The Interpublic Group of Cos., Inc*., 99 Fed. Appx. 339, 340-41 (2d Cir. 2004) (the "total look and feel" of two ads were very different despite similarities because the "differences [were] more overwhelming"); *Kaplan,* 133 F. Supp. 2d at 322 (vast differences were so significant that the ordinary observer considering the works' "total concept and feel" would not be "disposed to overlook them and regard their aesthetic appeal as the same").

The leading cases in this district concerning allegedly infringing photographs mandate the rejection of plaintiff's copyright infringement claim and effectively illustrate just how frivolous these claims are.  For example, in *Kaplan*, 133 F. Supp. 2d at 317, the Court addressed whether the following two photographs, each depicting "a businessperson contemplating a leap from a tall building onto the bustling city street below," were substantially similar:

 

Plainly, these images share a number of elements.  Both depict businessmen, dressed in pinstriped suits with wing-tipped shoes, contemplating suicide by gazing down at the street from the top of a tall building.  Both subjects are standing with their shoes partly over the edge of the building's ledge, poised to jump to a car-lined street below.  Despite these similarities, the Court held that the images were not substantially similar as a matter of law, explaining that "almost all of the similarities in expression between the two photographs are unprotectible elements or themes that flow predictably from the underlying subject matter."  *Id.* at 324.  After filtering out the unprotectable elements that predictably flow from the idea of a frustrated businessman contemplating suicide by jumping from a tall building, the Court dismissed the copyright infringement claim because the expressive elements—as opposed to the unprotectable ideas— were very different.

Similarly, in *Bill Diodato Photography, LLC*, 388 F. Supp. 2d 382, then-District Judge Chin held that the protectable elements of the following two photographs were not substantially similar as a matter of law:

 

Once again, the images share many elements: they show the bottom of a bathroom stall; the feet of a woman sitting on the toilet are visible; her feet are pointed inward; she is wearing stylish pink shoes with criss-crossing straps; and a handbag is on the floor next to her left foot. Rejecting the plaintiff's claims, the Court held that almost all of the similarities—including the low angle of the shot and the juxtaposition of the women's feet and handbags—were unprotectable *scenes a faires* that naturally flowed from the decision to depict the idea of "a woman's feet as she sits on the toilet, used as a striking device to highlight fashion accessories." *Id*. at 392. Thus, the Court granted summary judgment because the many elements common to the photographs merely flowed from the unprotectable idea that the photographs shared.

Many other courts in this Circuit have also dismissed copyright infringement claims for lack of substantial similarity where the photographs at issue were far more similar than the Images at issue here. *See, e.g., Cabell v. Sony Pictures Entm't, Inc.*, 714 F. Supp. 2d 452, 454-57, 460 (S.D.N.Y. 2010) (dismissing infringement claims as a matter of law, finding that promotional images for the movie *You Don't Mess with the Zohan*, featuring Adam Sandler in poses holding a blow dryer like a handgun, were not substantially similar to similar poses on plaintiff's novel cover, because the characters had different hair and clothing and the

backgrounds were different); *Psihoyos*, 409 F. Supp. 2d at 270, 274 (photographs of the same dinosaur fossils in their natural setting were not substantially similar because any similarities, including similarities in a sandy background and an overhead angle, flowed from a common idea); *Andersson v. Sony Corp.*, No. 96 Civ. 7975 (RO), 1997 WL 226310, at *3 (S.D.N.Y. 1997) (dismissing infringement claim where what the "two photos may arguably share, the *idea* of a woman in futuristic garb becoming fascinated with an object held in her hand is simply not protectible").

### (3)     The Images Are Not Substantially Similar As A Matter Of Law

Plaintiff's claim of substantial similarity is far weaker than the plaintiffs' unsuccessful claims in the cases discussed above, and her copyright claims should be dismissed accordingly. While the images at issue in several of those cases were at least superficially similar (albeit largely with respect to non-protectable elements), the Images here look virtually nothing alike.[1] An analysis of protectable and non-protectable elements is simply unnecessary to discern, for example, that there is no substantial similarity between McGinley's studio photograph of a tarantula on the torso of a reclining nude, shot against a white background with most of the nude's torso in the frame, and the supposedly corresponding Gordon Image.  The Gordon Image, by contrast, shows the midsection of a nude standing in front of a black background with a lock of hair across her belly (which plaintiff strains to describe as "spidery hair").  (*See* Am. Compl., Ex. E, No. 55.)

---

[1]   Moreover, 40 are "screen grabs" from videos, not photographs; and many have been manipulated by cropping, rotating, flipping or color alteration, in an attempt to make them appear slightly more similar.  (*See* Katz Decl., Ex. 2.)

Mindful of page limitations and the Court's statements during the pre-motion conference, defendants have not separately analyzed in this memorandum each of the allegedly infringing Images; instead, a spreadsheet comparing each of the Gordon Images to the corresponding McGinley Image is attached to the accompanying Declaration of Joshua B. Katz ("Katz Decl.") as Exhibit 2.  A review of the Images plainly demonstrates that no rational observer could find substantial similarity between the McGinley Images and protectable elements of the Gordon Images.  A few representative examples of non-infringement are described below.

Consider, for example, the McGinley Image entitled "Jessy," which plaintiff claims infringes her "Jessica" image.  (Am. Compl., Ex. E, No. 64.)  "Jessy," which is so named because the model is actress Jessy Brodsky, depicts Ms. Brodsky's full face staring at the camera with a white studio background.  By contrast, "Jessica" depicts a woman leaning over a black couch with her face obscured by her upper arm.  There is *no* similarity between these Images, much less substantial similarity in protected expression.

Likewise, the only arguable similarity between the photographs plaintiff's counsel described at the pre-motion conference as representing the "most blatant" example of infringement (ECF No. 23, Tr. 7:13-16) is that both images depict a man with a piece of clothing covering his mouth.  (Am. Compl., Ex. E, No. 34.)  The photos are in different settings and employ different shooting styles (tracking pan versus stationary); they depict different men, in different poses, in different lighting, and in different color palettes (color versus back and white).  Further, plaintiff's photograph was shot in a "mosh pit," with a number of individuals densely

packed behind the principal subject, while the McGinley Image depicts one individual riding a bicycle on an isolated street near Ground Zero on September 11, 2001.[2]

Plaintiff's "second most blatant" example of alleged copyright infringement is equally lacking in merit.  (*Id.*, No. 7).  The McGinley Image shows a woman against a white studio backdrop with her legs parted and eyes closed; in contrast, the Gordon Image depicts a woman with her eyes open and legs together, with a heavily cluttered background.  The only similarity is that both women have their arms folded above their heads.  This, however, is a common, unprotectable modeling pose, ubiquitous in clothing catalogs and often seen in works of art.  *See, e.g.*, Auguste Rodin, "A Reclining Female Nude, Arms Folded Over Her Head," ca. 1910 (image available at http://www.arthistory.upenn.edu/ashmolean/Rodin/Rodin_entry.html) (last visited June 7, 2011).

Indeed, impermissible efforts to claim copyright protection in abstract, unprotectable ideas are the leitmotif of plaintiff's lawsuit.  This fundamental flaw in plaintiff's case is perhaps best exemplified by her allegation that *three* very different McGinley Images somehow infringe the same Gordon Image: a crowded, urban street scene in which a working-class, Jesus-like figure wearing a ratty sleeveless tee shirt gazes skyward while seemingly holding back a throng of young men/apostles.  (Am. Compl., Ex. E., Nos. 2, 36, 81.)  Although plaintiff strains to find similarities, this dramatic, quasi-religious image could not be more different from the McGinley Images, each of which focuses on a single model in Levi's clothing, shot against an open background consisting either of clouds and sky or a studio backdrop.  The applicable McGinley

---

[2] It bears noting that Exhibit E, No. 34 is the only image allegedly infringed by Defendants Halpert and Halpert Gallery.  Thus, the Court need only find that these two images are not substantially similar to dismiss all claims against Halpert and Halpert Gallery.

Images are totally dissimilar both from one another and from the Gordon Image.  Compared to the Gordon Image, each of the McGinley Images has entirely different subject matter, setting, background, lighting, colors, and posing, as well as a very different "total concept and feel." What this shows—yet again—is that plaintiff is really complaining about the unprotectable idea that these four images arguably share: they each depict a person with outstretched arms (albeit at different angles).  But plaintiff has no rights in either the idea of a person with outstretched arms or any other idea that the various Images may share.  Thus, plaintiff's copyright infringement claims should be dismissed with prejudice.

### (4)      Plaintiff Improperly Compares Photographs to Videos

Almost one-third of the images that allegedly infringe plaintiff's still photographs are, in fact, screen grabs, that is, single frames taken from fast-paced videos and placed in image files, creating the false impression that they are still photographs.[3]  As discussed below, these cherry-picked screen grabs *still* look nothing like the images they purportedly infringe.  In addition to this vast dissimilarity between the images as represented in plaintiff's Exhibit E, plaintiff's infringement claims based on screen grabs should also be dismissed because the overall concept and feel is very different by virtue of the different mediums and because any use of elements contained in the Gordon Images is "*de minimis*."

---

[3] In all, plaintiff alleges infringement based on 39 screen grabs.  (*See* Katz Decl., Ex. 2, 6th Column.)  Most are multiple screen grabs of just three Levi's Video.  In at least one instance, plaintiff alleges that a screen grab of a Levi's Video infringes a screen grab from one of *her* videos.  (*Id.*)

11

The overall concept and feel of the Images are entirely different due not only to the different selections of film and camera in video versus still photography, but also to the expressive choices that these selections enable.  *See Kaplan*, 133 F. Supp. 2d at 323 (selection of film and camera among the expressive elements of photographic works).  The camera angles, lighting, focus and timing of defendants' videos are completely different from plaintiff's static photographs, as these elements in the videos are constantly changing.[4]  Courts have recognized that such differences between still photographs and moving sequences, by their very nature, may preclude a finding of substantial similarity.  For example, in *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir. 2000), the Eleventh Circuit affirmed the dismissal of a claimed infringement of a still photograph of a statue in a cemetery by a motion picture sequence shot in the same setting.  The court recognized that the "selection of lighting, shading, timing, angle and film" should be considered in a claim of photographic infringement, but found that in contrast to the still image, the motion picture of the same scene contained sequences in which the camera panned and rotated around the statue; that were shot in different lighting; and that had different surrounding gravestones and greenery.  *Id*. at 1215.  Here, the scenes in the Levi's Videos change rapidly, and even within each scene, move at a quick, choppy pace, with rapidly changing camera angles and lighting.  (Katz Decl., Ex. 3 (DVD of Levi's videos).)  The Gordon Images are moments frozen in time, in many instances highlighting a single movement, or an intimate scene, in the midst of a tumultuous crowd.  The video works at issue are therefore not substantially similar to the Gordon Images for the additional reason that the expressive choices in

---

[4]  NTSC video captures 29.4 frames per second.  Since two of the videos are 60 seconds long and one is two minutes, in each case plaintiff is comparing a single Gordon Image to a work containing at least 1,764 or 3,528 discrete images.

the videos—the selection of video camera, angles, lighting and timing—are different from the Gordon Images.

Furthermore, the allegedly infringing screen grabs are not substantially similar to the Gordon Images because common elements appearing in the videos, if any, are so trivial as to fall below the quantitative threshold necessary for substantial similarity. *See Ringgold v. Black Enter. Television, Inc.* 126 F. 3d 70, 74 (2d Cir. 1997). Substantial similarity requires that the copying be not only qualitatively but also *quantitatively* sufficient to support a finding of infringement. *Id.* at 75. If the quantity of copying is *de minimis*, the plaintiff's claims fails because "the quantitative threshold of substantial similarity … is always a required element of actionable copying." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) (quotation omitted). Under this standard, courts consider (i) the amount of the copyrighted work that was copied, as well as (ii) the observability of the copyrighted work in the allegedly infringing work. *Id.* at 217. Observability is determined by the length of time the copyrighted work appears in the allegedly infringing work, as well as its prominence in that work. *Id.*

As a result, courts have not hesitated to dismiss infringement claims based on *de minimis* use where the copyrighted work is either displayed briefly; is not a prominent part of the video; is out of focus; is displayed in poor lighting; or is shown in the distant background. *See, e.g., id.* at 218 (use of plaintiff's photographs in motion picture was *de minimis* because the works were displayed only briefly; they were not a prominent part of the film; and many of the shots were not in focus, were displayed in poor lighting and were in the distant background); *Gordon v. Nextel*, 345 F.3d 922 (6th Cir. 2003) (affirming dismissal based on *de minimis* use because plaintiff's two illustrations appeared fleetingly in a 30-second commercial); *Forlenza v. AT&T*, No. CV 03-8232 ABC (RNBx), 2004 U.S. Dist. LEXIS 29549 (C.D. Ca. April 12, 2004)

(dismissing infringement claim as *de minimis* where small portions of plaintiff's mural appeared for no more than three seconds, and a larger fragment of the mural appeared for one second); *Straus v. DVC*, 484 F. Supp. 2d 620 (S.D. Tex. 2007) (photograph that appeared for two to three seconds at the end of a thirty-second commercial was not observable and was *de minimis*); *De Batuc v. Spelling TV, Inc.*, CV98-6002 (C.D. Cal. Jan. 26, 1999) (plaintiff's mural, shown for no more than 4 seconds of a television show's 50-second opening sequence was *de minimis* because it was displayed only briefly, and was distorted because of the rapid pace of the camera).

Applying these standards, plaintiff's claims regarding the Levi's Videos should also be dismissed based on *de minimis* (alleged) use.  As noted, each of the screen grabs captures a fleeting moment in time—a split second—that is barely discernible in many instances and is insufficiently "observable" for purposes of establishing substantial similarity.  For instance, plaintiff somehow finds similarity between a photograph depicting mosh pit revelers, one of whose hand is "cut off" by the frame, and a screen grab in which a man inside a house bends down to pick something up (a religious figurine) while a "strange hand appears in the frame." (Am. Compl., Ex. E, No. 9.)  These images are wholly dissimilar, but, moreover, the video moves so quickly that it is virtually impossible even to see the "strange hand" about which plaintiff complains.  (Katz Decl., Ex. 3.)  Similarly, plaintiff complains that her still photograph of a boy doing a headstand is infringed by a screen grab of a boy doing a back flip.  (Am. Compl., Ex. E, No. 12.)  These images share nothing beyond the unprotectable idea of an upside-down boy, and the boy in the video is obviously only in the position reflected in the screen grab for a split second as he moves through his flip.  The same analysis applies to all of the screen grabs from the Levi's Videos; any alleged similarities do not rise to the level of actionable

infringement, as a matter of law, because the *de minimis* use, if any, falls far below the quantitative threshold required for substantial similarity.

### B.    The Contributory and Vicarious Infringement Claims Should Be Dismissed

Plaintiff alleges a claim of contributory copyright infringement against all defendants except Levi Strauss[5] (Am. Compl. ¶¶ 97-100), and a claim of vicarious copyright infringement against all defendants (Am. Compl. ¶¶ 101-104) under 17 U.S.C. §§ 101, *et seq.*  As shown below, these claims should be dismissed pursuant to Rule 12(b)(6), for failure to state a claim.

As a threshold matter, because the Amended Complaint fails to allege direct or primary copyright infringement by any defendant, *ipso facto* there can be no secondary infringement. *See, e.g., Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory [copyright] infringement absent actual infringement."); *Pavlica v. Behr*, 397 F. Supp. 2d 519, 528 (S.D.N.Y. 2005) ("To be found liable for contributory infringement, there must be a primary infringer.").

In addition, the Amended Complaint's allegations of contributory and vicarious copyright infringement cannot pass muster under Rule 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (quotation omitted).  She must plead enough facts to state a claim for relief that is plausible on its face—"enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  The plausibility standard asks for

---

[5] While defendants Halpert and Halpert Gallery are omitted from the caption of the "Second Claim for Relief", these defendants are included in the text of the allegations of this contributory infringement claim.  (Am. Compl. ¶¶ 98-100.)

more than a sheer possibility that a defendant has acted unlawfully.  *Id.* at 556-57.  A pleading must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted).  Here, plaintiff's contributory and vicarious copyright infringement claims, which aver only conclusory legal statements and fail to plead sufficient facts in support of plausible claims against the named defendants, should be dismissed.

**(1)    Plaintiff's Contributory Copyright Infringement Claim Fails**

Provided a complainant sets forth a claim of direct or primary copyright infringement (which the instant Amended Complaint does not), to be held liable for contributory infringement, it must be found that a party "with knowledge of the infringing activity," induce[d], cause[d] or materially contribute[d] to the infringing conduct of another."  *Matthew Bender & Co., v. West Publ'g Co.*, 158 F.3d 693 (2d Cir. 1998).

Here, the paragraphs in plaintiff's Amended Complaint that address contributory copyright infringement (Am. Compl. ¶¶ 97-100) merely lump together defendants McGinley, Perez, Halpert, Ratio 3 Gallery, Team Gallery and Halpert Gallery as having acted "individually and/or in concert with the other named Defendants" and "encouraged, induced, or materially contributed to the infringement of Plaintiff's copyrightable work, and Plaintiff's beneficial interest in the Gordon Images."  (*Id*. ¶ 98.)  Plaintiff also baldly alleges that these defendants "performed" these actions with actual and/or constructive knowledge of plaintiffs rights and interests."  (*Id*.)  Such formulaic recitations of the elements of a contributory infringement claim are insufficient to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp.*, 550 U.S. at 555.

Further, the lengthy tale that precedes plaintiff's contributory infringement claim fails to save plaintiff's pleading.  The Amended Complaint is devoid of factual allegations plausibly

establishing that any named defendant had actual knowledge of any allegedly infringing activity, and plaintiff's attempt to use "constructive knowledge" as a short cut fails.  Specifically, with respect to defendant McGinley, plaintiff's allegations that he had access to her work because their "paths crossed" and they used the same photographic printer (Am. Compl. ¶¶ 47-65), reflect nothing more than that which typically occurs in the art world, particularly among artists working in the same medium whose work is being shown at the same or similar galleries, museums and other venues.

    This also is true of the allegations with respect to defendants Perez and Ratio 3 Gallery; that Perez allegedly represented plaintiff and defendant during similar or different periods of time is meaningless in the absence of credible facts that he had any reason to know or believe that there was an alleged infringement by McGinley.  Similarly, with respect to defendant Team Gallery, plaintiff alleges only that she was at one time friendly with this Gallery's owner,[6] that the Gallery displayed McGinley's photographs (Am. Compl. ¶ 82), and that "constructive notice" of infringement exists because in August 2009 "plaintiff sent an email via Facebook to 60-70 persons within the art world regarding McGinley and the derivative nature of the McGinley Images . . . [and] *one of the recipients was Freire's ex-wife*." (Am. Compl. ¶ 83 (emphasis added).)  This fails to allege any culpable conduct by defendant Team Gallery, let alone "constructive notice" of any purported infringement.

    With respect to defendants Halpert and Halpert Gallery, plaintiff alleges only that seven years ago she sent Halpert some of her work after a non-party advised her to contact Halpert. She never heard from him, and recently the Halpert Gallery held an exhibit which contained one

---

[6] Although defendant Team Gallery owner José Freire was initially named as a defendant, he has been voluntarily dismissed from the action.

allegedly infringing McGinley photograph.  (Am. Compl. ¶¶ 88-90.)  Such meager factual

allegations do not raise a plausible inference of knowledge.

Finally, plaintiff's secondary claims are not saved by her conclusory invocations of "alter

ego" liability and the like.  Courts routinely dismiss claims supported only by such conclusory

allegations.  *E.g., Two Kids From Queens, Inc. v. J&S Kidswear, Inc.*, 2010 WL 475319, at *3

(E.D.N.Y. Feb. 8, 2010) ("[p]laintiff's complaint fails to set forth facts, as opposed to legal

conclusions to support its assertion of alter ego liability"; claim dismissed); *Key, Inc. v. Ultima*

*Diamonds, Inc.*, 2010 WL 3291582, at *9-10 (S.D.N.Y. Aug. 17, 2010) (collecting Second

Circuit cases dismissing alter ego/veil piercing claims as inadequately pled in the absence of real,

concrete facts).

### (2)    Plaintiff's Vicarious Copyright Infringement Claim Also Fails

Vicarious liability for infringement derives from agency principles of *respondeat*

*superior* and requires that the defendant "had a right and ability to supervise [the infringing

activity] that coalesced with an obvious and financial interest in the exploitation of copyrighted

materials." *Agence France Press v. Morel*, 2011 WL 147718 (S.D.N.Y. Jan. 14, 2011) (quoting

*Softel, Inc. v. Dragon Med. & Sci. Commcn's, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)).

Here, the paragraphs in plaintiff's Amended Complaint that address vicarious copyright

infringement (Am. Compl. ¶¶ 101-14) merely lump together "all" defendants as having "the

right, authority and the ability to control or supervise McGinley's actions, failure, and omissions

which violated plaintiff's copyright and beneficial interest in the Gordon Images" (*id*. ¶ 102), and

having "obtained a direct financial interest, financial advantage, and/or economic consideration

from the infringement."  (*Id*. ¶ 104.)  These formulaic recitations of the elements of a vicarious

infringement claim are insufficient to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp.*, 550 U.S.

at 555.  Such sweeping allegations are not particularized, and attempt to impose vicarious

liability on each defendant for the actions of all other defendants, even if they were not

connected.  For example, under such a recitation, Levi Strauss would be vicariously responsible

for McGinley Images that were not shot for and did not appear in its advertising, and the

galleries would be held responsible for McGinley Images that they did not display or sell.

In sum, plaintiff's contributory and vicarious copyright infringement claims wholly fail to

plead facts sufficient to support plausible claims against the named defendants.  These claims

should be dismissed pursuant to Rule 12(b)(6).

## II.    <u>Plaintiff's State Law Claims Should Be Dismissed With Prejudice</u>

### A.    Summary of Plaintiff's State Law Claims

In addition to her copyright claims, plaintiff asserts claims under the NYGBL for false

advertising and trademark dilution.  (*See* Am. Compl. ¶¶ 119-125 (Fifth Claim).)  Plaintiff also

asserts two claims against Chris Perez and Ratio 3 Gallery (the "Ratio 3 Defendants") for Breach

of Implied Contract ("Implied Contract Claim") and Breach of Implied Duty of Confidentiality/

Constructive Trust ("Implied Confidentiality Claim").  (*See* Am. Compl. ¶¶ 105-17 (Fourth

Claim) & ¶¶ 126-34 (Sixth Claim).)

The gravamen of plaintiff's NYGBL claims is that Defendants misled the public by

falsely attributing McGinley Images to McGinley, rather than to Gordon.  (*See id*.)  Specifically,

plaintiff alleges that Defendants "falsely advertised and disseminated in multi-media print and

electronic dissemination . . . materially misleading information, namely that the McGinley

Images were 'by Ryan McGinley'" and "omitted from such multi-media dissemination any

attribution to plaintiff and the Gordon Images."  (*Id*. ¶ 120.)  According to plaintiff, Defendants'

"wrongful conduct, acts, and omissions" constitute deceptive business practices and false

advertising under NYGBL §§ 349-350-a and "[d]ilution of Plaintiff's name" under NYGBL § 360-l.  (*Id*. ¶ 122(a) & (b).)

Plaintiff's Implied Contract and Confidentiality Claims are predicated on plaintiff's allegation that, by agreeing to exhibit some of her works prior to 2004, the Ratio 3 Defendants unwittingly entered into an implied licensing agreement with respect to plaintiff's photographs. (*Id*. ¶ 106.)  According to plaintiff, this implied contract "established that Plaintiff owns all the rights in and to the Gordon Images, including control over uses and the preparation of derivative works" and "granted the Ratio 3 Defendants a license only to represent Plaintiff and the Gordon Images as an agent/representative for the purpose of sale and license of the Gordon Images and Plaintiff's services."  (*Id*. ¶ 107.)  In a somewhat contradictory allegation, plaintiff contends the implied license "expressly" reserved to plaintiff "the right to *prevent adaptation or derivative works* based on the Gordon Images."  (*Id*. ¶ 108 (emphasis added).)  By "derivative works" plaintiff evidently means the McGinley Images, which she claims the Ratio 3 Defendants impliedly "promised" not to help create, promote or sell.  (*Id*. ¶ 110(ii).)  Notably, plaintiff claims that this implied contract was to "survive" indefinitely after "termination of the relationship between Plaintiff and the Ratio 3 Defendants."  (*Id*. ¶ 108.)  According to plaintiff, the Ratio 3 Defendants breached this implied contract by selling the "derivative works," *i.e.*, the McGinley Images.  (*Id*. ¶ 112.)  Plaintiff further contends that this alleged implied contract created a "trusting and confidential relationship" between the parties, which the Ratio 3 Defendants violated by selling the McGinley Images.  (*Id*. ¶ 129.)  Plaintiff demands that this Court impose a constructive trust and order an accounting of all gains derived from the sale of the McGinley Images.  (*Id*. ¶ 134.)

For the reasons discussed below, all of plaintiff's state law claims should be dismissed with prejudice on the following grounds: (a) plaintiff's claims are preempted by copyright law; (b) plaintiff has failed to state claims for false advertising, trademark dilution, breach of implied contract, and breach of implied duty of confidentiality/constructive trust; and (c) plaintiff's Implied Contract and Confidentiality Claims are barred by the statute of frauds.

### B.   Plaintiff's State Law Claims Should be Dismissed with Prejudice Because They are Completely Preempted by Federal Copyright Law

Section 301 of the Copyright Act "preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act." *Berry v. Deutsche Bank Trust Co. Americas*, No. 07 Civ. 7634(WHP), 2008 WL 4694968, at *5-6 (S.D.N.Y. October 21, 2008) (unjust enrichment claim preempted).  State law claims are preempted when:  (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act" (the Subject Matter requirement) and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law" (the General Scope requirement).  *Id.* at *6 (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 305 (2d Cir. 2004)).

The Subject Matter requirement is met if the claim involves "a work of authorship fixed in a tangible medium of expression," which falls within "one of the categories of copyrightable works." *Briarpatch*, 373 F.3d at 305.  Such works "need not consist entirely of copyrightable material," but "need only fit into one of the copyrightable categories in a broad sense." *Id.*  The General Scope requirement is met where the state law claim involves "acts of reproduction, adaptation, performance, distribution or display" and does not include "any extra element" that makes it "qualitatively different from a copyright infringement claim." *Id.* at 305.

The Second Circuit takes a "restrictive view" of what constitutes an "extra element" sufficient to transform an otherwise equivalent claim into one that is "qualitatively different from copyright infringement." *Id*. at 306. In determining whether an extra element is transformative, courts look at what the plaintiff "seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Id*. (extra element of "unjust enrichment" does not go "far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim'"). To avoid preemption, a state law claim must alter the "fundamental" nature of copyright infringement. *Id*.

Plaintiff's state law claims meet both prongs of the preemption test. First, there is no dispute that the Gordon Images are works of authorship "fixed in a tangible medium of expression," which fall into "one of the categories of copyrightable works." 17 U.S.C. § 102(5) (protecting "pictorial, graphic, and sculptural works"). Second, as detailed below, all of the claims seek to enforce rights equivalent to those protected by copyright and do not involve an "extra element" that transforms the fundamental nature of plaintiff's copyright claim.

### (1)    Plaintiff's Fifth Claim for False Advertising and Trademark Dilution Under NYGBL Is Preempted and Should be Dismissed with Prejudice

Plaintiff's NYGBL claims are based entirely on the allegation that defendants falsely attributed McGinley's works to McGinley and not to plaintiff. This is essentially a "reverse passing off" claim, *i.e.* "a claim that the defendant misrepresented the plaintiff's work as its own." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 422 & n.68 (S.D.N.Y. 2010) (dismissing claim that defendant falsely represented plaintiff's video footage as its own). Reverse passing off claims do "not constitute an extra element for preemption purposes" because they are equivalent to "a claim for unauthorized use of copyrightable material." *Id*.   Under the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23

(2003), and subsequent Southern District decisions, such claims "are the proper domain of copyright law" and "are preempted."  *Stadt*, 719 F. Supp. 2d at 422 & n.68; *see also Medical Educ. Dev. Svcs., Inc. v. Reed Elsevier Group, PLC*, No. 05 Civ. 8665 (GEL), 2008 WL 4449412, at *13 (S.D.N.Y. 2008) ("claims of alleging reverse passing off are preempted because they are the functional equivalent of copyright infringement claims").  For these reasons, Plaintiff's Fifth Claim for false advertising and trademark dilution under the NYGBL is preempted and should be dismissed with prejudice.

### (2)   Plaintiff's Implied Contract and Confidentiality Claims Against the Ratio 3 Defendants Are Preempted and Should be Dismissed with Prejudice

The gravamen of plaintiff's Fourth and Six Claims is that the Ratio 3 Defendants breached an implied licensing agreement by disseminating McGinley's images in violation of plaintiff's copyright.  This is precisely the same conduct that underlies plaintiff's copyright infringement claim.  *See Stadt*, 719 F. Supp. 2d at 321 (breach of contract claim based on allegation that "defendant used plaintiff's copyrighted work without authorization" is preempted).  A plaintiff "cannot merely rephrase the same claim citing contract law and thereby obtain relief equivalent to that which he has failed to obtain under copyright law." *Smith v. Weinstein*, 578 F. Supp. 1297, 1307 (S.D.N.Y. 1984) (plaintiff's implied and express breach of contract claims based on copying of copyrighted materials preempted).

The fact that an implied breach of contract claim inherently contains "extra elements" (such as breach of an implied promise) does not automatically shield it from preemption.  As explained in *Stadt*, "the weight of authority in the Southern District rejects a categorical rule [that breach of contract claims are never preempted] and supports finding preemption in those cases in which the breach of contract claim is based solely on the defendant's failure to respect those rights already protected by the Copyright Act."  719 F. Supp. 2d at 321 n.60 (citing *BroadVision*

*Inc. v. General Elec. Co.,* No. 08 Civ. 1489, 2008 WL 4684114, at \*4 (S.D.N.Y. Oct. 15, 2008);

*Price v. Fox Entm't Group, Inc.,* 473 F. Supp. 2d 446, 460-61 (S.D.N.Y. 2007); *Tannenbaum v.*

*Corbis Sygma,* No. 02 Civ. 5066, 2002 WL 31778813, at \*3 (S.D.N.Y. Dec. 12, 2002)); *see also*

*Editorial Photocolor Archives, Inc. v. Granger Collection*, 61 N.Y.2d 517, 521 (1984) (claims

arising from misappropriation of copyrighted photographs preempted by Copyright Act) (*cited in*

*Fin. Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 208 (2d Cir. 1986)).

Plaintiff's Implied Contract and Implied Confidentiality Claims are based entirely on the

allegation that the Ratio 3 Defendants copied and disseminated plaintiff's copyrighted works

without authorization.  Accordingly, these claims are preempted and should be dismissed with

prejudice.

C.     **Complete Preemption Requires Dismissal on the Merits**

Because plaintiff's state law claims are completely preempted by the Copyright Act, it is

respectfully submitted that the Court must exercise subject matter jurisdiction over them and

grant dismissal on the merits; in other words, the Court does not have the discretion to decline to

exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).  To explain, although federal

preemption "is generally a defense to plaintiff's suit" and thus "does not necessarily confer

jurisdiction," the doctrine of complete preemption holds that sometimes "the preemptive force of

federal law is so 'extraordinary' that it converts an ordinary state common-law complaint into

one stating a federal claim for purposes of the well-pleaded complaint rule."  *Briarpatch*, 373

F.3d at 304 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)).  In *Briarpatch*, the

Second Circuit concluded that the "the Copyright Act does just that" and, thus, the district courts

have federal question jurisdiction over preempted state law claims.  *Id*. at 305; *see also, e.g.,*

*Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) ("We likewise conclude that

Congress intended that actions preempted by § 301(a) of the Copyright Act be regarded as arising under federal law").  Accordingly, "once a district court determines that a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action."  *Briarpatch*, 373 F.3d at 309.  Plaintiff's state law claims should therefore be dismissed with prejudice.

**D.      Plaintiff's State Law Claims Also Fail to Plead Claims**

In addition to being preempted, plaintiff has failed to plead claims for false advertising, trademark dilution, and breach of the duty of confidentiality/constructive trust in accordance with Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

**(1)      Plaintiff Fails to State a Claim for False Advertising Under NYGBL §§ 349 and 350 Against Any Defendant**

To state a claim for false advertising under NYGBL §§ 349-50, the plaintiff must allege that the defendant's conduct (1) was "misleading in a material respect" and (2) was "directed at the public at large, injuring the plaintiff thereby."  *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) (dismissing false advertising claims arising from defendant's alleged infringement of plaintiff's copyright).  New York's false advertising statute is "at its core, a consumer protection device, not a tool to resolve disputes between competitors."  *Eliya Inc. v. Kohl's Dep't Stores*, 82 USPQ2d 1088, 1096, 2006 WL 2645196, at *5 (S.D.N.Y. Sept. 13, 2006) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  Non-consumer plaintiffs may not bring claims under NYGBL §§ 349-50 unless the gravamen of the complaint is a consumer injury or cognizable harm to the public interest, such as a "danger to public health or safety."  *Sports Traveler, Inc. v. Advance Mag. Publishers, Inc.*, 96 Civ. 5150(JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) (dismissing false advertising claim based on alleged similarity between two magazines).  A claim

under § 349 will not lie where "the only alleged harm is that which is generally associated with violations of intellectual property law." *Eliya Inc.*, 82 USPQ2d at 1096.

Plaintiff's claim that her business interests were harmed because defendants failed to give her due credit for the McGinley's images does not amount to a public harm. *See*, *e.g.*, *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (allegation that plaintiff was denied credit for joint work failed to state NYGBL claims); *Edward B. Beharry & Co. v. Bedessee Imports, Inc.*, No. 09-CV-0077(DLI)(JMA), 2010 WL 1223590, at *9 (E.D.N.Y. Mar. 23, 2010 (dismissing NYGBL §§ 349-50 claims arising from business dispute between competitors where plaintiff failed to allege harm to consumer); *Do Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408-09 (S.D.N.Y. 2009) (same); *see also Stadt*, 719 F. Supp. 2d at 323-24 (failure to credit plaintiff for use of video footage not public harm or materially misleading). Accordingly, Plaintiff's claim for false advertising should be dismissed with prejudice. *See id*. at 324 (amending claim would be futile, because alleged harm arising from private business transaction "has no plausible bearing on consumers or the public interest").

### (2)     Plaintiff Fails to State a Claim for Trademark Dilution Under the NYGBL

To state a claim for trademark dilution under NYGBL Article 24, plaintiff must allege that (1) she possesses a trademark "of truly distinctive quality or has acquired secondary meaning" and (2) "there is a likelihood of dilution." *Johnson & Johnson v. The Am. Nat. Red Cross*, 552 F. Supp. 2d 434, 447 (S.D.N.Y. 2008) (quoting *MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 2004 WL 434404, *9 (S.D.N.Y. Mar. 8, 2004)). The statute protects "[o]nly 'extremely strong marks'" and requires plaintiff to show that "through exclusive use and advertising by one entity, a name or mark has become so associated in the mind of the public with that entity or its product that it identifies the goods sold by that entity and distinguishes

them from goods sold by others." *Id.* at 447-48 (citations omitted).  Moreover, "the similarity [between the marks] must be substantial before the doctrine of dilution may be applied." *Le Book Pub., Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 313 (S.D.N.Y. 2005) (plaintiff failed to meet substantial similarity test because consumers would "no doubt understand" they were viewing two different products).

Here, plaintiff fails to meet any of the pleading requirements for trademark dilution.  She alleges neither that she possesses a distinctive mark nor that defendants used such a mark to identify the source of any goods or service.  Furthermore, for the reasons discussed above, as a matter of law plaintiff cannot show that her alleged mark is "substantially similar" to any marks allegedly used by Defendants.  In short, plaintiff's trademark dilution claim fails for the same reasons her copyright claims fail:  the allegedly infringing images are not substantially similar to her images, and for the additional reason that she does not allege a distinctive mark. Accordingly, plaintiff has failed to plead a claim for trademark dilution.

### (3)    Plaintiff Fails to State Claims for Breach of Implied Contract and Breach of Implied Duty of Confidentiality/Constructive Trust Against the Ratio 3 Defendants

Plaintiff's Fourth and Sixth Claims against the Ratio 3 Defendants are predicated on an alleged implied agreement reserving to Plaintiff all rights to create derivative works, which the Ratio 3 Defendants allegedly breached by creating and selling the McGinley Images.  Therefore, by its own terms, the alleged implied agreement could be breached only if the alleged derivative works (*i.e.* the McGinley Images) are substantially similar to the Gordon Images.  *See Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 146 n.9 (2d Cir. 1998) (if allegedly infringing work is not "substantially similar" to original, it is "not a derivative work and, for that matter, does not infringe the copyright of the original work").  Since, for the reasons discussed in

27

Part I, above, plaintiff's claims of substantial similarity fail as a matter of law, her Fourth and Sixth Claims must also fail.

In addition, plaintiff's Sixth Claim alleges that a "trusting and confidential relationship arose between plaintiff and the Ratio 3 Defendants" solely by virtue of an implied licensing agreement between the parties, which Defendants allegedly violated by selling the McGinley Images.  (Am. Compl. ¶ 129.)  New York law is clear, however, that a confidential relationship arises, not from "being a party to a contract," but from having "a position of trust or special confidence … that impose[s] obligations beyond the express agreements between the parties." *Stadt*, 719 F. Supp. 2d at 319 (citations and quotation marks omitted).  To survive dismissal, plaintiff must allege "adequate facts to suggest that the parties were in a relationship of sufficient trust and confidence to create … a confidential relationship."  *Id*. at 323; *see also Poon v. Roomorama, LLC,* No. 09 Civ. 3224, 2009 WL 3762115, at *3 (S.D.N.Y. Nov. 10, 2009) ("plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship").  Conclusory allegations that the Defendant "entered [into] a confidential relationship" are insufficient.  *Stadt*, 719 F. Supp. 2d at 319 ("standard licensing agreement" does not create confidential relationship).

Here, plaintiff fails to allege facts sufficient to establish that she had a confidential relationship with the Ratio 3 Defendants, "as opposed to a typical, arms length business relationship." *Id*.  Accordingly, plaintiff's Sixth claim for breach of the duty of confidentiality/constructive trust should be dismissed with prejudice.

**E.      Plaintiff's Implied Contract and Confidentiality Claims Against
the Ratio 3 Defendants Are Barred by the Statute of Frauds**

Plaintiff's Fourth and Six Claims against the Ratio 3 Defendants are both predicated on

an alleged implied licensing agreement that was to "survive termination of the relationship"

between the parties.  (Am. Compl. ¶ 108.)   Thus, according to plaintiff's own allegations, the

contractual obligations owed by the Ratio 3 Defendants were to continue indefinitely.  (*Id.*)

Based on this fictional licensing agreement, the Ratio 3 Defendants are allegedly prohibited from

selling a single McGinley Image in perpetuity.  Such an indefinite licensing agreement is barred

by the statute of frauds, because it cannot be performed within one year.  *See* N.Y. Gen. Oblig.

Law § 5-701; *Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.*, 65 N.Y.2d 75, 78-79

(1985) (implied license agreement allegedly limiting use of fabric design not performable within

one year); *Zupan v. Blumberg*, 2 N.Y.2d 547, 550 (1957) ("service contract of indefinite

duration, in which one party agrees to procure … orders on behalf of the second party, is not by

its terms performable, within a year").  Accordingly, plaintiff's Implied Contract and

Confidentiality Claims against the Ratio 3 Defendants should be dismissed with prejudice.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with

prejudice, in its entirety, and grant defendants any other relief deemed proper.

Dated:  New York, New York
       June 10, 2011

KENT, BEATTY & GORDON, LLP             DAVIS & GILBERT LLP


By: _/s/_ Jack A. Gordon_____   By: __/s/ Guy R. Cohen_____
    Jack A. Gordon                      Guy R. Cohen
    (*jag@kbg-law.com*)              (*gcohen@dglaw.com*)
    Joshua B. Katz                       Shirin Keen
    (*jbk@kbg-law.com*)               (*skeen@dglaw.com*)

425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Defendant*
*Ryan McGinley*

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: __/s/_Edward H. Rosenthal_____
    Edward H. Rosenthal
    (*erosenthal@fkks.com*)
    Nicole I. Hyland
    (*nhyland@fkks.com*)
    488 Madison Avenue, 10th Floor
    New York, New York 10022
    (212) 980-0120

    *Attorneys for Defendants Cristobal Perez*
    *(erroneously named as Christopher Perez)*
    *and Ratio 3 Gallery*

WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER, LLP

By: __/s/_ Jura C. Zibas_____
    Jura C. Zibas
    (*jura.zibas@wilsonelser.com*)
    Scott M. Smedresman
    (*scott.smedresman@wilsonelser.com*)
    150 East 42nd Street
    New York, New York 10017
    (212) 490-3000

    *Attorneys for Defendants Peter Halpert and*
    *Peter Hay Halpert Fine Art*

1740 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant*
*Levi Strauss & Co., Inc.*

BRADY KLEIN & WEISSMAN, LLP

By: __/s/ Margaret M. Brady___
    Margaret M. Brady
    (*pbrady@bkwlegal.com*)
    Ronnie L. Silverberg
    (*rsilverberg@bkwlegal.com*)
    501 Fifth Avenue, 19th Floor
    New York, New York 10017
    (212) 949-5800

    *Attorneys for Defendant*
    *Team Gallery Inc.*

30