# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 11 Civ. 1001 (RJS)

JANINE GORDON,

Plaintiff,

VERSUS

RYAN MCGINLEY, *ET AL.*,

Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/18/2011

OPINION AND ORDER
August 18, 2011

RICHARD J. SULLIVAN, District Judge:

This copyright infringement action concerns the field of art photography and the limits of federal copyright law. Specifically, Plaintiff Janine Gordon alleges serial exploitation of her work by a rival art photographer, Defendant Ryan McGinley. Plaintiff also brings this suit against Defendants Levi Strauss & Company, Inc., Christopher Perez, Ratio 3 Gallery, Team Gallery Inc., Peter Halpert, and Peter Hay Halpert Fine Art, alleging direct, contributory, and vicarious copyright infringement, as well as various state law claims.[1] Now before the Court is Defendants' joint motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiff has failed to meet even the most basic threshold for pleading copyright infringement, Defendants' motion is granted.

I. BACKGROUND

Plaintiff is a professional photographer who has practiced in the field of photographic art for more than 15 years.[2]

---

[1] Three additional Defendants, José Friere, Agnés Andrée Marguerite Troublé, and Agnes B. Worldwide, Inc., were named in the pleadings but were thereafter voluntarily dismissed.

[2] As noted below, the facts set forth herein are derived from the Amended Complaint, which is presumed to be true for purposes of the instant motion. *See ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In addition, the Court has considered Defendants' Memorandum of Law in Support of the Motion to Dismiss ("Defs.' Mem."), Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss ("Pl.'s Opp'n"), and Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss ("Reply"), as well

(Am. Compl. ¶ 41.) Her work has been exhibited at such venues as the Whitney Museum, where her pieces are on permanent display, the San Francisco Museum of Modern Art, Dartmouth College, and the Hammer Museum in Los Angeles. (*Id.* ¶¶ 41-42.)

Defendant Ryan McGinley is a rival art photographer whose work comprises the principal subject of this infringement action. The Complaint alleges a sprawling history of "surreptitious[]" copyright infringement (*id.* ¶ 2), in which McGinley obtained access to Plaintiff's work through her public exhibitions (*id.* ¶¶ 48, 53) and thereafter produced "strikingly similar" images (*id.* ¶ 57). McGinley allegedly created images that were "both blatantly and subtly derivative" of Plaintiff's work (*id.* ¶ 68) for a series of advertising campaigns commissioned by Defendant Levi Strauss (*id.* ¶ 66). The Complaint further alleges that various (1) art galleries, including Defendants Ratio 3 Gallery, Team Gallery, and Peter Hay Halpert Fine Art; and (2) art gallery owners, including Defendants Christopher Perez and Peter Halpert, "used, sold, distributed, and/or exploited" the infringing McGinley work. (*Id.* ¶ 98(i).) Attached to the pleadings are no fewer than 150 allegedly infringing images (the "McGinley Images"), including a side-by-side comparison with each of Plaintiff's allegedly infringed images (the "Gordon Images").[3] (*Id.*, Ex. E.)

---

as the various exhibits and declarations attached thereto.

[3] The Court notes that Plaintiff failed to append Exhibits A-H to the Amended Complaint. Because the missing exhibits include the compendium of images at issue, the Court has also considered the original Complaint for the limited purpose of examining Exhibits A-H.

Plaintiff commenced this action by filing a Complaint on February 14, 2011 and an Amended Complaint on March 29, 2011. The Amended Complaint includes causes of action for direct copyright infringement in violation of 17 U.S.C. §§ 101 *et seq.*, contributory copyright infringement, vicarious copyright infringement, breach of implied contract, breach of implied duty of confidentiality, deceptive trade practices in violation of New York General Business Law § 349, false advertising in violation of New York General Business Law § 350, and trademark dilution in violation of New York General Business Law § 360(L). Defendants moved to dismiss on June 10, 2011, and the motion was fully submitted as of July 11, 2011.

## II.  LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to

plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

In order to establish a copyright infringement claim, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (internal citation and quotation marks omitted). In this case, Defendants move to dismiss the copyright claims based primarily on the issue of substantial similarity. (*See* Defs.' Mem. 3.) Accordingly, the principal issue before the Court is whether a substantial similarity exists between the allegedly infringing images and the protectible elements of Plaintiff's work.

#### A. Substantial Similarity

##### 1. The Standard

Although "[t]he test for infringement of a copyright is of necessity vague," *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960), "[t]he question of substantial similarity is by no means exclusively reserved for resolution by a jury," *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). Where, as here, "the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id.* at 64. Thus, if the district court determines that the works at issue are "not substantially similar as a matter of law," *Kregos v. Associated Press*, 3 F.3d 656, 664 (2d Cir. 1993), the district court can properly conclude that the plaintiff's complaint and the works incorporated therein do not "plausibly give rise to an entitlement to relief," *Iqbal*, 129 S. Ct. at 1950.

"The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (quoting *Hamil Am.*, 193 F.3d at 100). In applying the so-called "ordinary observer test," the district court asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). When faced with works "that have both protectible and unprotectible elements," however, the analysis must be "more discerning." *Gaito*, 602 F.3d at 66. In such circumstances, the district court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves*, 71 F.3d at 1002 (emphasis omitted).

Courts have noted the apparent tension between a copyright test that embraces the holistic impression of the lay observer and one that imposes the partial filter of the "more discerning" observer. *See, e.g.*, *Canal+ Image UK Ltd. v. Lutvak*, No. 10 Civ. 1536 (RJH), 2011 WL 2396961, at *6 (S.D.N.Y. June 8, 2011). But rather than jettison the more discerning observer test, the Second Circuit has explicitly "disavowed any notion that [the courts] are required to dissect [the works] into their separate components, and compare only

those elements which are in themselves copyrightable." *Gaito*, 602 F.3d at 66 (internal citations and quotation marks omitted). Instead, we are primarily guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003), as informed by our "good eyes and common sense," *Hamil Am.*, 193 F.3d at 102 (alteration omitted).

2. The Images

In this case, the dictates of good eyes and common sense lead inexorably to the conclusion that there is no substantial similarity between Plaintiff's works and the allegedly infringing compositions of McGinley. Although the Court declines to conduct an exhaustive inventory of the 150 allegedly infringing images, a representative sample illustrates and confirms this result.

Exhibit A to Plaintiff's opposition papers pairs each McGinley Image with the allegedly infringed Gordon Image and compares the two based on content, color, composition, technique, texture, perspective, and lighting. (Pl.'s Opp'n, Ex. A.) Exhibit A-1, purportedly the most "blatan[t]" of the infringing images,[4] contains two photographs of young men suspended before a cloudy sky, each with his right arm extended and bent at an approximate right angle. (*Id.*, Ex. A-1.)

---

[4] (*See* Pl.'s Opp'n 2 (noting that Exhibit A arranges the images in the "order of blatancy").) The Court notes that although the image citations herein refer to Exhibit A to Plaintiff's opposition papers, the same images appear in Exhibit E to the original Complaint, albeit in a different order.



**Gordon Image (Ex. A-1)**



**McGinley Image (Ex. A-1)**

But there the similarity ends. The Gordon Image is black and white and vertical, while the McGinley Image is in full color and horizontal. The Gordon figure is clothed in a short-sleeve T-shirt, dark pants, and tennis shoes; his hair is closely shorn. The McGinley figure is clothed in a long-sleeve shirt and shorts and is barefoot; his hair is medium-length. Plaintiff attempts to obscure these "peripheral" differences by cropping and rotating the Gordon Image and converting the McGinley image to black and white. (Pl.'s Opp'n 18.) But not even these alterations can reconcile the "total concept and overall feel" of the two images. *Tufenkian Import/Export Ventures*, 338 F.3d

4

at 133. The Gordon figure is muscular and taut, with not one but both arms splayed in a gesture of virile triumph. The look on his face is intent, perhaps even defiant. The McGinley figure is slender and his posture relaxed, with both legs floating apart rather than clenched together. His head drapes to one shoulder and a dreamy look inhabits his face as he falls through the frame. Thus, the overall feel of the McGinley Image is that of a passive figure simply surrendering to gravity, while the overall feel of the Gordon Image derives from a dynamic figure jumping into the frame. No dissection of the images is required to discern the "utter lack of similarity" between the two. *Gaito*, 602 F.3d at 66.

The remaining exhibits are even less compelling. Exhibit A-27, for example, depicts both a stunt biker with his motorcycle (the Gordon Image) and two nude models on roller skates (the McGinley Image). (Pl.'s Opp'n, Ex. A-27.) Both the biker and the roller skaters are engulfed in smoke.



**Gordon Image (Ex. A-27)**



**McGinley Image (Ex. A-27)**

Once again, Plaintiff attempts to manipulate the comparison, this time by flipping the McGinley image horizontally and superimposing color-coded outlines of the shapes and figures that purportedly correspond. But even granting Plaintiff's dubious analogy between the motorcycle in the Gordon Image and the crouching roller skater in the McGinley Image, the relationship between the figures remains distinct. The female roller skater sits astride the shoulders of the male roller skater in the McGinley Image, while the stunt biker in the Gordon Image stands adjacent to his motorcycle, touching only the handlebar. The female roller skater faces the camera, smiling broadly, while the stunt biker appears in silhouette, his face concealed by a helmet. In short, "no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Bros. Inc.*, 720 F.2d at 240.

Although Plaintiff consistently alters the images at issue in order to bolster her infringement claims, the Exhibit A compendium also illustrates her penchant for strained image descriptions. For example, Exhibit A-35 contains two photographs of the nude female pelvis, one with hair draped over the shoulder and covering the abdomen (the Gordon Image), and one with a tarantula positioned over the belly button (the McGinley Image). (Pl.'s Opp'n, Ex. A-35.) In the Gordon Image, the model is standing against a black background with her hands on her hips. In the McGinley Image, the model is reclining on a light background, and her arms do not appear in the photograph. Plaintiff nonetheless insists that this too is copyright infringement, straining to describe the unruly tresses of the Gordon model as "long spidery hair." (*Id.*) What Plaintiff neglects to consider is that "[i]n copyright infringement actions, the works themselves

supersede and control contrary descriptions of them." *Gaito*, 602 F.3d at 64 (internal citations and quotation marks omitted). Thus, simply assigning creative adjectives to features of a photograph cannot manufacture substantial similarity where none exists.

The flaw in Plaintiff's case is perhaps best illustrated by her allegation that three separate McGinley Images infringe the same Gordon Image, albeit for slightly different reasons. The Gordon Image at issue depicts a crowded street scene in which a central figure gazes skyward while seemingly restraining a throng of young men with his outstretched arms. (Pl.'s Opp'n, Exs. A-13, A-66, A-67.)



**Gordon Image (Exs. A-13, A-66, A-67)**

The three McGinley Images each depict a single figure against the background of a clouded sky (*id.*, Exs. A-13, A-66) or a studio backdrop (*id.*, Ex. A-67).



**McGinley Image (Ex. A-13)**



**McGinley Image (Ex. A-66)**



**McGinley Image (Ex. A-67)**

Plaintiff emphasizes the outstretched arms in all three McGinley Images, as well as the open mouths in Exhibits A-13 and A-66 and the upturned faces in Exhibits A-13 and A-67. But despite these common elements, the "total concept and overall feel" of the allegedly infringing photographs wildly diverges from that of the Gordon Image. The Gordon figure acts in response to the crowd behind him, his arms reaching across the bodies of his companions in a gesture of restraint. By contrast, the figures in the McGinley Images are conspicuously alone. The McGinley Image in Exhibit A-13 captures a moment of private enchantment at sunset. The model spreads his (or her) arms in a gesture of silent rapture; a falling leaf lingers at the bottom of the frame. In Exhibit A-66, the McGinley model thrusts his arms above his shoulders, creating a silhouette that is both stylized and vaguely cruciform. Finally, the McGinley model in Exhibit A-67 extends his arms behind his body, as if to propel himself into flight. A solitary shadow fills the corner of the frame.

6

None of the foregoing McGinley Images captures or even echoes the responsive contact or the urban grit that characterize the corresponding Gordon Image. Because a side-by-side comparison of these photographs "simply does not prompt an ordinary observer to regard the aesthetic appeal . . . as the same," *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 463 (S.D.N.Y. 2007), there can be no finding of substantial similarity.

The Court further notes that 39 of the allegedly infringing Gordon Images are screen grabs from video files rather than still photographs. (*See* Defs.' Mem. 11 n.3.) Exhibit A-104, for example, depicts two interracial couples kissing. In both images, a black man in the right half of the frame kisses a white woman in the left half of the frame. The faces of the couple in the Gordon Image are hidden from view, while the faces of the couple in the McGinley Image appear in full profile, with the arms of the woman stretched overhead.



**Gordon Image (Ex. A-104)**



**McGinley Image (Ex. A-104)**

Less readily apparent is the fact that only the Gordon Image is a still photograph. The McGinley Image is a screen grab from "Levi's America," a video montage that combines black-and-white footage of rural and urban Americana. (*See* Defs.' Mem., Ex. 3.) The soundtrack to the one-minute video features a solemn and sonorous voice reciting the Walt Whitman poem "America," as each word or phrase flashes on screen. The allegedly infringing McGinley Image appears at the 51-second mark, spliced between video of a shadowy figure standing on a wooden post and a shirtless adolescent leaping through the spray of sparks from a firecracker.

Thus, the allegedly infringing McGinley Image is derived from a wholly dissimilar and dynamic medium, in which camera angles, lighting, and focus are changing at a rate of 29.4 frames per second. (*See* Defs.' Mem. 12 n.4.) Plaintiff supplies little authority for the proposition that a single frame from a work containing more than 1,700 discrete images (*see id.*) can support a claim for copyright infringement of a still photograph.[5] Instead, Plaintiff quotes extensively from Judge Kaplan's opinion in *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005), arguing that the photograph-video comparison is permissible because "a photographer's 'conception' of his subject is copyrightable." (Pl.'s Opp'n 12 (quoting *Mannion*, 377 F.

---

[5] The Court notes that a recent copyright decision by Judge Scheindlin identified substantial similarity between a music video and a still photograph based on a determination that "both works share the frantic and surreal mood of women dominating men in a hyper-saturated, claustrophobic domestic space." *LaChapelle v. Fenty p/k/a/ Rihanna*, No. 11 Civ. 945 (SAS) (S.D.N.Y. July 20, 2011), Doc No. 34, at 22. Although the Court is ultimately unpersuaded by the analysis in *LaChappelle*, the fact remains that the images at issue in this action are so obviously dissimilar as to make the *LaChappelle* decision wholly inapposite.

7

Supp. 2d at 458)). But the protected "conception" is not the idea of an interracial kiss, but the artist's "originality in the rendition, timing, and creation of the subject – for that is what copyright protects in photography." *Mannion*, 377 F. Supp. 2d at 458. In this case, neither the timing nor the creation of the subject is original to Plaintiff, and the static rendition of the Gordon Image bears no likeness to the pace and pulse of the corresponding McGinley work. Thus, Plaintiff's appeal to *Mannion* simply underscores the substantial dissimilarity between the images at issue.

### 3. The Experts

In lieu of identifying substantial similarities in the allegedly infringing images, Plaintiff appeals to a series of affidavits by various artists, curators, and critics who have embraced her cause. Based on these submissions, Plaintiff argues that the "consensus" of experts who have reviewed the Gordon and McGinley Images is that McGinley's work is "not original to him" (Pl.'s Opp'n 17) and that his photographs "are overtly and repeatedly derived" from Gordon's (*id.* at 19).

But Plaintiff's reliance on her battery of art experts is misplaced. Second Circuit law clearly "limit[s] the use of expert opinion in determining whether works at issue are substantially similar." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992). Although courts have occasionally permitted expert testimony in technical fields such as computer programming, such exceptions are "not intend[ed] to disturb the traditional role of lay observers in judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works or literature." *Id.* at 713-14; *see Shine v. Childs*, 382 F. Supp. 2d 602, 614 n.8 (S.D.N.Y. 2005) (same). Thus, despite the prestigious credentials of the artists and aficionados who have rallied to Plaintiff's side, their testimony bears no relevance to the issue of substantial similarity in this case.

Moreover, the substance of the expert affidavits simply underscores the infirmity of Plaintiff's infringement claim. Several experts profess a belief that Plaintiff should prevail in this action while disavowing any familiarity with copyright law. (*See* Pl.'s Opp'n, Ex. B, Aff. of Dan Cameron, June 27, 2011, ¶ 4 ("I do not pretend to understand all the legal complexities of Ms. Gordon's case"); *id.*, Ex. F, Aff. of Volker Diehl, June 29, 2011, ¶ 9 ("I am unfamiliar with laws surrounding this issue, in particular the laws of the United States as it pertains to such causes of action").) Another opines on the contours of "fine art ethics" (*id.*, Ex. D, Aff. of Heather Holden, June 24, 2011, ¶ 12) and acknowledges that art expertise "may be needed" to discern the relationship between the images at issue (*id.*, Ex. D., Holden Aff., ¶ 11). What is clear from the foregoing expert testimony is not that Plaintiff should prevail in this action, but that the remedy for the instant dispute lies in the court of public or expert opinion and not the federal district court.

Upon examining the "total concept and feel" of the McGinley Images with "good eyes and common sense," *Hamil Am.*, 193 F.3d at 102, the Court "confidently conclude[s] that no average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work," *Gaito*, 602 F.3d at 67 (internal citation and quotation marks omitted). The fact that McGinley's works may be ultimately derivative and unoriginal in an artistic sense – something which the Court has neither the expertise nor inclination to

pronounce upon – is beside the point. Most commercial advertising is derivative in that sense, and as the Second Circuit has observed, "not all copying results in copyright infringement." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001). Plaintiff's apparent theory of infringement would assert copyright interests in virtually any figure with outstretched arms, any interracial kiss, or any nude female torso. Such a conception of copyright law has no basis in statute, case law, or common sense, and its application would serve to undermine rather than promote the most basic forms of artistic expression. One might have hoped that Plaintiff – an artist – would have understood as much, or that her attorneys, presumably familiar with the basic tenets of copyright and intellectual property law, would have recognized the futility of this action before embarking on a long, costly, and ultimately wasteful course of litigation in a court of law. In any event, for the reasons set forth above, and as should have been obvious from the outset, the Court grants the motion to dismiss Plaintiff's copyright infringement claim.

### B. Other Claims

Because Plaintiff fails to allege direct copyright infringement by any Defendant, there can be no secondary infringement claim. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual infringement . . . ."); *BroadVision, Inc. v. Med. Protective Co.*, No. 08 Civ. 1478 (WHP), 2010 WL 5158129, at *4 (S.D.N.Y. Nov. 23, 2010) ("A party claiming vicarious liability must establish that direct infringement occurred . . . ."). The Court also declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

### III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is HEREBY GRANTED. The Clerk of the Court is respectfully directed to terminate the motion located at Doc. No. 25 and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: August 18, 2011
New York, New York

\*\*\*

Plaintiff is represented by Joseph J. Mainiero and Antony Hilton of the Law Offices of Joseph J. Mainiero, Esq., 305 Broadway, Suite 402, New York, New York 10007. Defendant Ryan McGinley is represented by Jack A. Gordon and Joshua B. Katz of Kent, Beatty & Gordon, LLP, 425 Park Avenue, New York, New York 10022. Defendant Levi Strauss & Co. Inc. is represented by Guy Robert Cohen and Shireen Keen of Davis & Gilbert LLP, 1740 Broadway, New York, New York 10019. Defendants Christopher Perez and Ratio 3 Gallery are represented by Edward Henry Rosenthal and Nicole Isobel Hyland of Frankfurt Kurnit Klein & Selz, P.C., 488 Madison Avenue, New York, New York 10022. Defendant Team Gallery, Inc. is represented by Margaret M. Brady and Ronnie L. Silverberg of Brady, Klein & Weimann LLP, 501 Fifth Avenue, Suite 1900, New York, New York 10017. Defendants Peter Halpert and Peter Hay

Halpert Fine Art are represented by Jura Christine Zibas of Wilson Elser Moskowitz Edelman & Dicker LLP, 150 East 42nd Street, New York, New York 10017, and Scott Mailman Smedresman of Wilson Elser Moskowitz Edelman & Dicker LLP, 3 Gannett Drive, White Plains, New York 10604.